Elridge **GLASFORD**, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Defendant.**

**No. 91 Civ. 2869 (MBM).**

United States District Court, S.D. New York.

March 23, 1992.

---

OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff sues New York State Department of Social Services ("NYSDSS") pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1988, claiming that defendant violated his rights under the First, Fourth, and Fourteenth Amendments to the Constitution. Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. For the many reasons set forth below, defendant's motion is granted.

## I.

Plaintiff and defendant have recounted only sketchy facts in the complaint and in their briefs. In order to supplement this meager record, I have incorporated facts from the administrative and judicial documents appended to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss. Section II, *infra*, which sets forth the statutory scheme provided by Article 6, Title 6, of the Social Services Law ("SSL"), further supplements the record.

Defendant maintains the Central Register of the State of New York as a repository of reports from various sources of suspected abuse or maltreatment of children. *See* SSL § 422(1). In or about September 1985, there was entered on that register a report that plaintiff had sexually abused his two children. (*see* Pl.Ex. B)

The alleged abuse had been reported by a caseworker for the Bronx Special Services for Children. Under SSL § 413, the Bronx Special Services caseworker had an affirmative duty to forward to NYSDSS a report of suspected abuse once she had a "reasonable cause to suspect" that plaintiff's children were sexually abused.

At plaintiff's request, an administrative hearing was held on October 23, 1989, at which plaintiff sought to have the report expunged from the Central Register. (Koweek Aff.; Def.Mem. at 6) The hearing officer decided that some evidence existed to support the report, and recounted

Colin A. Moore, Brooklyn, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., Andrea M.A. Osborne, Asst. Atty. Gen., New York City, for defendant.

the procedural history of plaintiff's case as follows. On October 7, 1985, the Commissioner of NYSDSS filed a petition in Bronx Family Court seeking a declaration of child abuse. The petition alleged the same acts of sexual abuse as the "indicated," *i.e.* substantiated, report maintained by the Central Register. (Pl.Ex. H at 3) On May 15, 1986, defendant filed another petition in the Bronx Family Court seeking an order declaring plaintiff's son an abused or neglected child. (Pl.Ex. B) On October 7, 1986, the Family Court entered an order that included the finding that plaintiff had abused his two children. On May 6, 1987, the Family Court entered an Order of Disposition that reached the same conclusion as the October 7, 1986 order. (*Id.*)

The administrative hearing officer reiterated the SSL § 422(8)(b)(ii) requirement that a "Family Court finding of abuse or neglect against the subject of a report in the Central Register in regard to an allegation contained therein shall create an irrebuttable presumption that the allegation in the report is substantiated by some evidence." (*Id.* at 4) Because the Family Court had found that plaintiff sexually abused his two children, the administrative hearing officer determined that "it is irrebuttably presumed that there is some credible evidence that [plaintiff] so abused his children." (*Id.* at 5)

Plaintiff now challenges the fairness of the "fair hearing," claiming that "the finding of sexual abuse in the Central Register, without an impartial hearing [was] in violation of [his] rights of procedural due process. (Compl. ¶ 6) He also claims that SSL's "some credible evidence" standard of review is impermissible, vague, and overbroad, and is less than the standard of "substantial" evidence employed by most administrative determinations.

## II.

Article 6, Title 6, of the SSL governs the recording and investigation of reports of suspected abuse or maltreatment of children, and the administrative process by which substantiated reports may be reviewed and, if appropriate, expunged. Plaintiff does not contend that defendant violated the SSL's statutory scheme in his case.

Within 24 hours of making or receiving from the Central Register a report of suspected child sexual abuse or maltreatment, the local agency must commence an investigation into the report. SSL § 424(6). The local agency must file a preliminary report with the Central Register within seven days of receipt of the initial report, and follow-up reports "at regular intervals." *Id.* § 424(3). The local agency also must notify the subject of the report of the existence of the report and of his or her rights under the SSL. *Id.*

Within 90 days of receiving the report, the local agency must complete its investigation and determine whether the report is "unfounded" or "indicated." *Id.* § 424(7). A report is "indicated" if "an investigation determines that some credible evidence of the alleged abuse or maltreatment exists." *Id.* § 412(6). Otherwise, a report is deemed "unfounded." *Id.* § 412(5). If the local agency determines that a report is unfounded, the Central Register must expunge "forthwith" all information identifying the subject of the report. *Id.* § 422(5).

If the report is indicated, the local child protective service must offer "family services" to the family of the allegedly abused child. *Id.* § 424(11). If the family refuses "family services," the child protective service can choose to commence Family Court action if it determines that the best interests of the child requires it do so. *Id.* § 424(11).

After the investigation has been completed, but not later than 90 days after receipt of the report, a subject of an indicated report "may request the Commissioner of the NYSDSS to amend, or seal, or expunge the record of the report." *Id.* § 422(8). Defendant then must obtain from the local child protective service all pertinent material in order to determine whether there is some credible evidence that the subject committed the act(s). *Id.* § 422(8)(a)(ii). If there is "some evidence," the report will not be expunged at that time and a administrative "fair hearing" will be scheduled to

review defendant's determination not to expunge the record. *Id.* § 422(8)(a)(v). At the fair hearing, the local agency that initially investigated the report bears the burden of adducing some credible evidence that the subject committed the acts. *Id.* § 422(8)(b)(ii); *Ebanks v. Perales*, 489 N.Y.S.2d 313, 111 A.D.2d 331 (2d Dept. 1985).

If it is determined at the fair hearing that some credible evidence exists to support the report, the subject of the report may seek judicial review of the administrative determination by commencing a proceeding in state court pursuant to C.P.L.R. Article 78. At the Article 78 proceeding, the court is required to determine whether there is substantial evidence in the administrative record to support the defendant's decision not to expunge the record of abuse. C.P.L.R. § 7803(4).

### III.

■ Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), alleging that the Eleventh Amendment bars plaintiff's suit. Despite its literal wording (the "Judicial power of the United States shall not be construed to extend to any suit ... against one of the United States by Citizens of another State"), the Eleventh Amendment has been interpreted to prohibit a suit in federal court against a state government by a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). Plaintiff has named as the defendant in this action New York State's Department of Social Services, which is considered part of the state for purposes of the Eleventh Amendment. *See Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). Plaintiff now claims that, "In the instant case, the action is clearly against Cesar Perales, Commissioner of the Department of Social Services...." (Pl.Mem. at 6) Plaintiff makes this belated claim about the identity of the "real defendant" in order to

bring his case within the exception to the Eleventh Amendment set forth by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not bar suits against state officers for injunctive relief. However, even accepting plaintiff's claims about the identity of the "real defendant," plaintiff's action fails on the merits.

### IV.

■ A motion to dismiss under Rule 12(b)(6) may be granted only when it appears that plaintiff can prove no set of facts in support of his complaint that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). For purposes of deciding a Rule 12(b)(6) motion, the allegations of the complaint must be taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

■ Plaintiff states that his "instant action is a 1983 action predicated upon the violation of plaintiff's 14th amendment rights," (Pl.Mem. at 3), in that he was "deprived of his due process rights without a prior evidentiary hearing or without a prompt and fair administrative hearing." (*Id.* at 4)

■ In order to establish a violation of procedural due process under the Fourteenth Amendment to the Constitution, plaintiff must show: (1) that the government deprived him of an interest "encompassed by the Fourteenth Amendment's protection of liberty and property," (2) without the constitutionally required process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the case at hand, plaintiff claims that his "good name" and "reputation," as well as his relationship with his family implicate a liberty and/or property interest protected by the Constitution. (Pl. Mem. at 5) Moreover, plaintiff contends that the investigation of plaintiff's family "by employees of the Department of Social Services and the recordation of the report in the State Register was sufficient state

action to trigger the operation of the due process clause." (*Id.*)

Plaintiff relies on *Bd. of Regents* and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), to establish that defendant deprived him of a constitutionally protected right, but neither case does so. In *Bd. of Regents*, the Supreme Court found that due process did not require a state university to hold a hearing before it decided not to renew the employment contract of an assistant professor who was not tenured and who had no contract rights to continued employment with the university. In reaching this conclusion, the Court reasoned that "the State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community." 408 U.S. at 573, 92 S.Ct. at 2707. However, the Court appears to have been discussing a situation in which the university imposed a stigma that would have affected respondent's ability to find other employment. This reading of *Bd. of Regents* is confirmed by *Paul*.

In *Paul*, the Court found that petitioner's distribution of flyers of "active shoplifters" that included respondent's name and photograph did not deprive respondent of a liberty or property right secured by the Fourteenth Amendment. The Court reasoned that the line of cases discussing harm to an individual's reputation did "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. at 701, 96 S.Ct. at 1161. However, *Paul* also acknowledges that as to marriage, procreation, contraception, family relationships, and child rearing and education, "there are limitations on the States' power to substantively regulate conduct." *Id.* at 713, 96 S.Ct. at 1166. ·

The complaint in the case at hand does not allege that plaintiff's employment prospects suffered as a result of the report in the Central Register that he sexually abused his children. Therefore, plaintiff must be relying on the dicta in *Paul* regarding family relationships to support his claim. However, plaintiff's relationship with his family was not altered as a result of the report in the Central Register.

In fact, plaintiff's relationship with his children was altered not by the entry of his name on the Central Register but by the proceedings in Family Court at which the family court judge found that plaintiff had abused his children. Notably, plaintiff does not dispute the impartiality or sufficiency of these proceedings at which he had the right to appear, to cross-examine, and to present evidence. Therefore, plaintiff must be contesting only the effect of the report in the Central Register on his reputation. However, *Paul* held that effect on one's reputation, without more, is not a constitutionally protected liberty or property interest.

■ Moreover, even if plaintiff had alleged a deprivation of a constitutionally protected interest, he still received all the process that was due. In order to determine what process is due, the court must weigh the following:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In the case at hand, plaintiff's interest in maintaining his reputation must be weighed against the state's interest in protecting his children against abuse. Article 6, Title 6, of the SSL establishes a detailed process for investigation and review of abuse. Such allegations are investigated according to a statutory schedule and the child's interests are protected pending a final determination regarding the alleged abuse. The subject of the report has the right to an administrative hearing upon the

completion of the investigation, which itself can take no more than 90 days. Plaintiff has offered no evidence that there is a heightened risk of an erroneous deprivation as a result of the SSL's statutory framework. Indeed, it would have been impossible for him to do so given the findings of both the Bronx Family Court and the fair hearing. Both fora determined that there was evidence supporting the report in the Central Register that plaintiff had sexually abused his children, and therefore the SSL's statutory framework appears to have rendered an accurate result in plaintiff's case.

Finally, plaintiff contests the SSL's use of the "some evidence" standard of review, claiming that it is less than the standard of "substantial" evidence employed by most administrative determinations, and unconstitutionally vague. First, plaintiff is wrong when he claims that other administrative determinations are held to a different evidentiary standard. The New York Court of Appeals has found that administrative determinations need be only rational and based on some evidence. *See, e.g., O'Rourke v. Kirby,* 54 N.Y.2d 8, 444 N.Y.S.2d 566, 429 N.E.2d 85 (1981). Substantial evidence is the *judicial* standard of review of administrative determinations. *See* C.P.L.R. § 7803(4).

Second, as Judge Haight wrote about application of the void-for-vagueness doctrine to a civil suit between private parties:

> The relevance of the "void-for-vagueness" to the case at bar is problematical. The doctrine is most clearly identified with criminal law, deriving its origins from procedural due process: the citizen's right to know in advance and with precision the type of behavior that may result in criminal penalties. The doctrine is also closely associated with the First Amendment Right to engage in protected political speech and conduct.

*Ragin v. New York Times Co.,* 726 F.Supp. 953, 964 (S.D.N.Y.1989), *aff'd,* 923 F.2d 995, 1002 (2d Cir.) (finding that "[e]ven if we indulge in the assumption that the vagueness doctrine applies to civil cases" the standard in question provides sufficient notice), *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). In the case at hand, plaintiff claims that a civil statute is unconstitutionally vague. That claim is as problematical here as it was in *Ragin.* However, even assuming that the void-for-vagueness doctrine applies to the SSL, that statute passes muster. Plaintiff was apprised of the conduct that would bring him within the reach of the SSL; that is the core due process interest protected by the void-for-vagueness doctrine. Moreover, New York courts consistently have applied the some evidence standard without finding any apparent ambiguity. *See, e.g., Minella v. Perales,* 558 N.Y.S.2d 680, 163 A.D.2d 629 (3d Dept.1990); *Sellnow v. Perales,* 551 N.Y.S.2d 428, 158 A.D.2d 846 (3d Dept. 1990); *Cooper v. Wiley,* 513 N.Y.S.2d 151, 128 A.D.2d 455 (1st Dept.1990). Small wonder; evidence, after all, is not a concept unfamiliar to courts. *Cf.* Fed.R.Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

For the above reasons, defendant's motion to dismiss is granted and the complaint is dismissed.

SO ORDERED: