DONALDA E. VACCARO[1] *vs.* GEORGE H. VACCARO.

Worcester. May 6, 1997. - June 5, 1997.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, GREANEY, & MARSHALL, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention. *Domestic Violence Record Keeping System.*

A District Court judge was without statutory or other authority to order the expungement of a record of the issuance of a temporary protective order pursuant to G. L. c. 209A from the Statewide domestic violence record keeping system. [155-162]

CIVIL ACTION commenced in the Clinton Division of the District Court Department on September 27, 1993.

A motion to expunge, filed on August 10, 1995, was heard by *Thomas F. Fallon,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Joseph F. Whalen,* Assistant Attorney General, for Department of Probation.

*Paul W. Patten* for the defendant.

GREANEY, J. A judge in the District Court allowed a motion by George H. Vaccaro to have his record expunged from the Statewide domestic violence record keeping system (system), created by St. 1992, c. 188, § 7. The Department of

[1]Donalda Vaccaro is not a party to this appeal. The Department of Probation (department) sought to become a party to the case by reason of the motion to vacate the order that is the subject of this appeal. As a result of the motion, the parties to the appeal, George Vaccaro and the department, treated the department as having intervened. There is no question that the department has a cognizable interest in the case because of the duties imposed on the Commissioner of Probation by St. 1992, c. 188, § 7, to maintain a Statewide system of records of various types of domestic violence orders. There is also no question that the issues presented in the appeal are of public importance and concern the interests of many individuals involved in abuse prevention proceedings. We therefore include the department as a party, despite its failure to file a formal motion to intervene.

Probation (department) moved to have the order vacated. The motion was denied by the judge. The department appealed, and we allowed George Vaccaro's application for direct appellate review. We conclude that the judge lacked authority to order expungement. Accordingly, we vacate the order.

The background of the case is as follows. On September 27, 1993, Donalda Vaccaro (Donalda), who was separated from her husband, George, applied in the District Court (with the assistance of the police) for an emergency temporary protective order against him, pursuant to G. L. c. 209A, § 5. The following day, based on the representations set forth by Donalda in her affidavit,[2] a judge in the District Court entered the requested temporary protective order pursuant to G. L. c. 209A, § 4, and George was served with the order.

A hearing on the continuance of the temporary protective order was held on October 15, 1993, at which both parties appeared. As might be expected, conflicting testimony was presented to the judge as to what had occurred during the marriage and when George had entered the marital home. Donalda testified to incidents of verbal and physical abuse during the marriage and her ongoing fear that George would harm her. George denied having committed any acts of abuse and explained that he had entered the marital home to retrieve his tax return and personal belongings. At the conclusion of the hearing, the judge expressed his belief that Donalda was genuinely fearful, but ruled that he could not objectively conclude that she had been placed in fear of "imminent serious physical harm," justifying the continuation of the protective order. The judge then vacated the order. George filed a motion to expunge "the name George H. Vac-

---

[2] In her affidavit, Donalda stated that George had broken into the marital home through a second story window, had taken personal papers and otherwise disrupted her home office, and had removed his collection of handguns and rifles from the safe in the house. George did not have a key to the home and had agreed with Donalda that he would make prior arrangements with her before coming to the home. Donalda was fearful because, she said, George, in addition to disrupting her office, had left a semi-automatic rifle and ammunition lying around and the safe door open. In her affidavit, Donalda said that she was afraid because George appeared unstable, and she referred to incidents of prior verbal and physical abuse and harassment. The information provided to the court in Donalda's affidavit was sufficient to allow the court to conclude she had been placed in fear of "imminent serious physical harm." See G. L. c. 209A, §§ 1 (b), 4.

caro from the Domestic Offender Database." The department was not notified of the motion. After an ex parte hearing, George's motion was allowed. When it learned of the expungement order, the department promptly moved to have it vacated. The judge conducted a hearing, at which he received and considered memoranda of law. The judge denied the department's motion, and this appeal ensued.

1. We agree with the department that there is no statutory authority for the order directing expungement entered by the judge.

Civil restraining or protective orders, like the order involved in this case, may be entered pursuant to G. L. c. 209A, which provides that the courts have jurisdiction over abuse prevention cases as described therein. Orders for the protection of those abused may be granted under G. L. c. 209A, §§ 3, 4, and 5, and are enforced under G. L. c. 209A, § 7. By St. 1992, c. 188, § 7, the Legislature authorized and directed the Commissioner of Probation (commissioner) to develop and implement the system, which is to contain a computerized record of the issuance and violation of *any* restraining or protective order. Section 7 goes on to restrict access to the records in the system to judges and law enforcement agencies.[3] The commissioner was further directed by § 7 to "make a written report to the joint committee on the judiciary regarding implementation of [the mandated] record

---

[3]This portion of § 7 (which has not been codified in the General Laws) reads as follows:

> "The commissioner of probation is hereby authorized and directed to develop and implement a statewide domestic violence record keeping system . . . . Said system shall include a computerized record of the issuance of or violations of any protective orders or restraining orders issued pursuant to [G. L. c. 208, §§ 18 and 34B; c. 209, § 32; c. 209A; c. 209C, §§ 15 and 20]. Further, said computerized system shall include the information contained in the court activity record information system maintained by the office of said commissioner. The information contained in said system shall be made available to judges considering petitions or complaints pursuant to [G. L. c. 208, §§ 18 and 34B; c. 209, § 32; c. 209A; c. 209C, §§ 15 and 20]. Further, the information contained in said system shall be made available to law enforcement agencies through the criminal justice information system maintained by the executive office of public safety. . . ."

keeping system no later than October [9, 1992]." In his report, the commissioner advised the Legislature that the system had been created, and that the records would contain not only data as to an original order, but also data on subsequent modifications. See Report to the Joint Committee on the Judiciary at 2 & Attachments One, Five (Oct. 9, 1992). The department suggests in its brief that the record in the system concerning George would reflect not only the entry of the temporary protective order on September 27, 1993, but also the fact that the order had been vacated on October 15, 1993.

There is nothing in St. 1992, c. 188, § 7, or in G. L. c. 209A, that permits a record to be removed or that authorizes the entry of a judicial order directing expungement of a record from the system. George argues that express authority for a judicial order directing expungement is contained in the third paragraph of § 7 of G. L. c. 209A, which states that "[t]he court shall notify the appropriate law enforcement agency in writing whenever any [restraining or protective] order is vacated and shall direct the agency to destroy all record of such vacated order and such agency shall comply with that directive." However, under the language of the second paragraph of G. L. c. 209A, § 7, which deals with service of a restraining or protective order and its underlying complaint and summons, the "appropriate law enforcement agency" referred to in the third paragraph of § 7 clearly refers to the agency to which orders are transmitted for service. According to Guideline 4:07 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 1996) (Guidelines), which concerns the service of protective orders and their supporting papers, the words "appropriate law enforcement agency" mean the "police department of the municipality wherein the defendant can be found." Thus, the record identified for destruction in the third paragraph of G. L. c. 209A, § 7, is the order previously transmitted to the police department called on to serve the order. In this manner, G. L. c. 209A ensures that the record of a vacated restraining or protective order at the police department level will be eliminated, thereby obviating the possible service of a vacated order or any harm that might occur from the intentional or inadvertent public disclosure of an expired order.

The third paragraph of § 7 of G. L. c. 209A has no ap-

plication to the department, which, of course, is not involved in the process of serving restraining or protective orders. The Legislature's express directive in the act, that a computerized record be kept in the system of all orders, inactive as well as active, and the absence of any provision for removal or authority for expungement, reflects a deliberate legislative decision that all records be available for review by a judge who is considering an application for a restraining or protective order and by other authorized agencies that have a legitimate need to see the record. See St. 1992, c. 188, §§ 1, 2, 4, and 5.[4]

It follows from what has been said that no power to order expungement can be implied. See *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't*, 410 Mass. 831, 836-837 (1991) (whether implied power of expungement exists is dependent upon whether "fair reading" of applicable statutes reveals such a power); *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 662-663 (1978), and cases cited (power of court must be articulated expressly or be "capable of being deduced by 'necessary and inevitable' implication"). The system is designed to promote the goal of preventing abuse as prescribed by a variety of statutes by providing a judge (and other authorized agencies) with complete information about a defendant. Such information "can be essential to providing protection for the plaintiff." See Guidelines, commentary to Guideline 2:10. Because all restraining and protective orders are listed, both active and inactive, a judge may be better able to identify situations in which the plaintiff "may face a particularly heightened degree of danger." *Id.* at commentary to Guideline

---

[4] These provisions of the act require a judge to "cause a search to be made of the [system]" and to "review the resulting data to determine whether the named defendant has a civil or criminal record involving domestic or other violence." In addition to amending G. L. c. 209A, § 7, the act made the search requirement applicable to the statute governing divorce, G. L. c. 208, by inserting § 34D; amending the statute governing husbands and wives, G. L. c. 209, § 32; amending the statute governing children born out of wedlock, G. L. c. 209C, § 15; and also amending, through St. 1992, c. 188, § 6, the District Court statute governing process, issuance of complaints for misdemeanor, consideration of criminal records and domestic violence records, and the right to a hearing, G. L. c. 218, § 35A. Further, G. L. c. 276, § 58A (1), the statute governing pretrial detention where a defendant is alleged to be dangerous, lists the issuance of orders under G. L. c. 209A, §§ 3, 4, or 5, as a factor to be considered in deciding whether dangerousness has been demonstrated.

3:05.[5] The power of expungement cannot be a necessary or inevitable implication of the statutory mandate to record such orders and make them available to judges or other authorized agencies. On the contrary, such a power would be inconsistent with the manifest purpose of G. L. c. 209A and other abuse prevention statutes.

In reaching this conclusion, we have considered and rejected George's argument that, as a result of our decision in *Police Comm'r of Boston, supra,* the order of expungement is a lawful incident of, and ancillary to, the court's original jurisdiction under G. L. c. 209A. That case concerned the maintenance of juvenile arrest records, in the absence of express statutory authority requiring them to be kept, when the existence of the record poses a substantial danger of harm to the juvenile and its maintenance is not counterbalanced by any valid State interest. Unlike that case, George's record has been maintained in response to an express legislative directive that contains no provision for expungement. See *Commonwealth* v. *Vickey,* 381 Mass. 762, 772 (1980) (distinguishing the *Police Comm'r of Boston* decision; no judicial enlargement required where statutory scheme is spelled out by Legislature). Further, the focus of the statutory framework that resulted in the creation and maintenance of the system is on the protection of prospective victims, and the protective purpose of both the act and G. L. c. 209A is undisputed. Thus, this is not a case where there is "little or no valid law enforcement purpose . . . served by the maintenance and dissemination of . . . records." *Police Comm'r of Boston, supra*

---

[5]While, in George's case, the temporary protective order was vacated after a hearing before a judge, more frequently such orders are vacated because the plaintiff has chosen not to pursue the order. The dynamics of this choice are complex and can involve the plaintiff's self-esteem, financial and family pressures, a desire for reconciliation, coercion, intimidation, or the heightened sense of danger that accompanies a separation. See Guidelines for Judicial Practice: Abuse Prevention Proceedings, commentary to Guideline 2:06 (Oct. 1996). Because a fair proportion of such vacated orders may include a high level of abuse, inclusion of vacated orders in the system can provide meaningful information, notwithstanding their inactive status and regardless of the reason for termination. See Office of the Commissioner of Probation, The Tragedies of Domestic Violence (Oct. 1995).

at 642. Finally, there is a statutory and administrative scheme in place to ensure the confidentiality of records in the system.[6]

2. George also argues that the District Court's power to expunge his record arises from the inherent power of the court to uphold art. 12 of the Declaration of Rights of the Constitution of the Commonwealth.[7] There are two parts to his argument. As we understand the first part, George claims that St. 1992, c. 188, § 7, is facially unconstitutional because the directive in St. 1992, c. 188, § 4, that a judge who is considering an application for relief under G. L. c. 209A consult the system to review the "civil or criminal record" of the alleged abuser, effectively gives criminal weight to a civil restraining or protective order. Second, George argues that

---

[6]George argues that the existing system is inadequate to protect his confidentiality because it is incapable of preventing unwarranted disclosure. The legislative and administrative scheme in place adequately protects George and others similarly situated: the records in the system are available only to trial court judges through the court's computer system and to law enforcement agencies through the criminal justice information system (CJIS), access to which is limited by regulation to certified criminal justice agencies and to those otherwise authorized by the criminal history systems board. CJIS information is to be used "only for a criminal justice purpose in the performance of . . . official duties and responsibilities." 803 Code Mass. Regs. § 3.05 (1995). The CJIS regulations also contain additional restrictions governing who can have access to the information and for what purpose. See 803 Code Mass. Regs. §§ 3.02-3.09 (1995). This statutory and regulatory scheme forecloses general access by the public to records of civil restraining and protective orders. Access to the system is thus limited to those agencies or persons who require such information in order to further the protective purpose of the act, G. L. c. 209A, and other statutes aimed at preventing abuse.

[7]George does not make a direct argument that the District Court possesses the inherent power to expunge names from the registry. An inherent power is a power "whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 672 (1996), quoting *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 535 (1982). Inherent powers involve the internal functioning of the judiciary, see *Brach* v. *Chief Justice of the Dist. Court Dep't*, *supra*, and are only implicated when the lack of a statutorily authorized power impairs the function of the court or threatens the maintenance of its authority. See *Sheriff of Middlesex County* v. *Commissioner of Correction*, 383 Mass. 631, 635 (1981). There is nothing in St. 1992, c. 188, §§ 4 or 7, that impairs the court's function or threatens its authority or ability to decide cases so as to require an exercise of any inherent power of expungement. Compare *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 664-665 & n.18 (1978).

the application of St. 1992, c. 188, § 7, to include his record in the system has violated his due process rights under art. 12.

George's first contention — that inclusion of information regarding civil orders along with criminal data effectively makes the former criminal in nature — lacks merit. We have held that the procedures involved in the consideration and issuance of civil restraining or protective orders under G. L. c. 209A do not infringe on a defendant's due process rights under art. 12. *Frizado* v. *Frizado*, 420 Mass. 592, 596 (1995). The requirements of §§ 4 and 7 of St. 1992, c. 188, do not diminish any of the due process protections established in *Frizado*, nor does the inclusion of all relevant data, both civil and criminal, involving domestic violence on the part of an individual into one system also violate that individual's due process rights. The Legislature could properly require that a judge (and others enforcing the domestic violence laws) have available and review all pertinent information before issuing a new order against an individual or taking other action, and it makes little sense to maintain two systems and require an independent examination of both. Further, a judge who is reviewing a particular individual's record is presumed to understand the difference between a civil order and a criminal violation and to accord to each its proper weight. See *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 168 (1984).

George's second argument — that, as applied to him, St. 1992, c. 188, § 7, has violated his due process rights under art. 12 — is also not persuasive. The United States Supreme Court has held that a person's reputation is not a protected liberty interest under the Fourteenth Amendment to the United States Constitution unless "a right or status previously recognized by state law [is] distinctly altered or extinguished." *Paul* v. *Davis*, 424 U.S. 693, 711 (1976). See *Siegert* v. *Gilley*, 500 U.S. 226, 233-234 (1991) (affirming the conclusions of *Paul* v. *Davis*); *Romero-Barcelo* v. *Hernandez-Agosto*, 75 F.3d 23, 32 (1st Cir. 1996), quoting *Beitzell* v. *Jeffrey*, 643 F.2d 870, 878 (1st Cir. 1981) ("actionable deprivation of a liberty interest in one's reputation 'must be accompanied by a change in the [person's] status

or rights' ").[8] There is, as noted below, no express protection for reputation contained in art. 12,[9] and, in the context of the present case, we follow the analysis set forth above in the *Paul* decision in deciding whether art. 12 has been violated.

Accordingly, George must show more than a generalized fear of injury to his reputation; absent evidence of "a change in [his] status or rights," he cannot show that St. 1992, c. 188, § 7, violates his right to due process. See *Romero-Barcelo, supra*. The sole assertion made by George is his subjective feeling that, because of the record in the system, he is "put in a very difficult position" as a licensed insurance broker by questions on applications for renewal of his insurance licenses. We have already pointed out that there are ample confidentiality procedures in place to protect the information in the system from general dissemination. See *Bishop* v. *Wood*, 426 U.S. 341, 348 (1976) (where information is not made public, it cannot form basis for claim of injury to reputation). George does not allege that the Commonwealth has released any information from the criminal justice information system (see note 6, *supra*) to any prospective licensing agency, nor that, under current statutory restrictions, the Commonwealth could legally release such information. It has not been shown that any requirement of St. 1992, c. 188, § 7, has affected George's ability to gain employment or otherwise has altered or extinguished a previously existing right or status held by him. See *Paul* v. *Davis, supra* at 701, 711.

---

[8]This analysis is referred to as the "stigma plus" test for determining whether an injury to an individual's reputation constitutes a deprivation of a liberty or property interest protected by the Fourteenth Amendment. See *Valmonte* v. *Bane*, 18 F.3d 992, 999-1000 (2d Cir. 1994).

[9]George contends that because the Declaration of Rights makes express reference to an individual's character, the due process protections of art. 12 are automatically implicated when State action injures an individual's reputation. This is not the case. Although other articles of the Declaration of Rights refer to "character" (see art. 11 [right to access to courts and speedy trial]; art. 18 [right to demand qualifications of public officeholders]; art. 29 [right to a fair trial and impartial jury]), there is no reference to character in art. 12, on which the defendant has based his due process claim. In addition to art. 12, due process protection is also provided under arts. 1 & 10 of the Declaration of Rights, and under Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth, *Opinion of the Justices*, 423 Mass. 1201, 1229 n.20 (1996), but there is no mention of character in these provisions. We therefore conclude that there is no independent protection for an individual's reputation under art. 12.

This is an entirely different situation from that presented in *Valmonte* v. *Bane*, 18 F.3d 992 (2d Cir. 1994), where the United States Court of Appeals for the Second Circuit found that an individual's liberty interest had been violated because an unfounded child abuse accusation was maintained on a State registry. *Id.* at 1001. The *Valmonte* decision was based on the State's requirement that this information be disseminated to potential employers in the child care field. *Id.* at 1002. George cannot and does not claim that licensing authorities are authorized to access information maintained in the system. See *Hodge* v. *Jones*, 31 F.3d 157, 165 (4th Cir.), cert. denied, 513 U.S. 1018 (1994) (retention of records pertaining to child abuse did not implicate liberty interest where loss was "no more than a conclusory allegation of reputational injury"); *Glasford* v. *New York State Dep't of Social Servs.*, 787 F. Supp. 384, 388 (S.D.N.Y. 1992) (no liberty interest implicated where neither claimant's employment prospects nor family relationships were affected by failure to expunge claimant's name from registry of child abusers). We therefore conclude that George has failed to show an injury to a liberty or property interest protected under art. 12, and his constitutional claim must fail.

3. The order of the District Court entered on May 6, 1996, allowing George's motion to expunge is vacated, and a new order is to be entered denying the motion.

*So ordered.*