Kaplan, Mitchell H., J.
I. INTRODUCTION
This case, once again, raises the issue of whether, or pursuant to what standard, the Superior Court may adjudicate a claim made by a registered representative of a securities broker-dealer that he is entitled to have records of customer complaints expunged from the data bases maintained by defendant Financial Industry Regulatory Authority, Inc. (FINRA). Plaintiff Dustin Aiguier was formerly a registered representative of New York Life Securities, LLC (NYLife). While with NYLife, four complaints were lodged against him by six of his customers (including two sets of spouses) (collectively, the Customers). The plaintiff has filed a complaint which he styles: “Amended Petition for an Order of Expungement of Customer Dispute Information from the Central Registration (CRD System)” (the Complaint). In addition to FINRA, the Complaint also names the Customers as defendants (although the plaintiff seeks no relief with respect to them). The Securities Division of the Office of the Secretary of the Commonwealth has intervened in this action as a defendant on the ground that it is a primary regulator of the securities industry in Massachusetts and is responsible for protecting the public’s interest in access to information concerning customer complaints. The case is now before the court on all of the defendants’ motions to dismiss the Complaint. They move for dismissal asserting that: (a) the Superior Court lacks subject matter jurisdiction (Mass.R.Civ.P. 12(b)(1)) and (b) the Complaint fails to state a claim on which relief may be granted (Mass.R.Civ.P. 12(b)(6)). For the reasons that follow, their motions are allowed.
II. FACTUAL BACKGROUND
The court will begin by summarizing the relevant factual allegations in the Complaint, assumed to be true for purposes of this motion, as well as relevant information contained in attachments to the Complaint, to the extent necessary to address the issues raised by the defendants’ motions. It will then describe the regulatory framework relevant to this dispute.
A. The Plaintiffs Relationship to NYLife and the Customer Complaints
The plaintiff was a registered representative of NYL-ife until June 3, 2015, when he was discharged. Four written complaints against him were submitted to NYLife by his customers; each involved the sale of annuities. NYLife settled each of the claims without an arbitration proceeding being commenced. As required by FINRA rules, it reported the claims and settlements to FINRA, and a description of each claim and the settlement, as well as the plaintiffs response to each claim, are available to the public on FINRA’s Broker-Check website. The complaints are reported in Broker-Check in the following order: the first was received on September 10, 2015 and settled for $40,229.37; the second was received on August, 13, 2015 and settled for $95,961.16; the third was received on July 28, 2015 and settled for $12,286.78; and the fourth was received on January 1, 2013 and settled for $8,500.
After the plaintiff left NYLife, its representatives solicited customer complaints against him. Three of *123 these complaints were the result of this solicitation, which was in some way related to a pyramid scheme engaged in by a NYLife management employee.
The disclosures regarding the first three claims and settlements are false and misleading.[1] As to the fourth, the plaintiff followed all rules and procedures in the sales process, NYLife found that he had not engaged in any wrong doing, and the settlement was made in the interest of good customer relations.
B. FINRA
FINRAis aprivate, not-for-profit corporation organized under the laws of Delaware. It is a self-regulatoiy organization (SRO) registered with the Securities and Exchange Commission (the SEC). Under federal securities law, as an SRO, it plays a central role in the regulation of the securities industry. As applicable to this case, FINRAis required to “establish and maintain a system for collecting and retaining registration information” for representatives of broker-dealers. See 15 U.S.C. §§78o-3(i)(l)(A) and (i)(5). In forms approved by the SEC, FINRA collects, among other items, “information about registered personnel, including customer complaints . . .” See SEC Release No. 34-71959, 79 Fed.Reg. 22734 (Apr. 17, 2014); see also Desiderio v. Nat’l Ass’n Sec. Dealers, 191 F.3d 198, 201 (2nd Cir. 1999) (“the SEC . . . must approve all [FINRA’s] rules and regulations”). The complaints are recorded in an electronic database called the Central Registration Depository (CRD) which FINRA maintains in compliance with federal securities law and an agreement with the state securities regulators in all 50 states. The federal securities law requires that this complaint information, as well as other data, be available to the public. See 15 U.S.C. §78o-3(i)(l)(B) (“A registered securities association shall . . . establish and maintain ... a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding . . . registration information on its members and their associated persons”). FINRA fulfills this obligation with an online internet resource which it calls BrokerCheck. The four customer complaints lodged against the plaintiff, as well as information concerning the reason that NYLife discharged him, are available to the public on BrokerCheck together with the plaintiffs response to each complaint.
FINRA has promulgated Rule 2080, which addresses the means by which information concerning a broker that exists in the CRD may be expunged. It states, in relevant part:
(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.
(b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an addition parly and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below.
(1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral findings that:
(A) The claim allegation or information is factually impossible or clearly erroneous;
(B) The registered person was not involved in the alleged investment related sales practice violation, forgery, theft, misappropriation or conversion of funds; or
(C) The claim, allegation or information is false.
(2) If the expungement relief is based on judicial or arbitral findings other than those described above, FINRA, in its sole discretion and under extraordinary circumstances, also may waive the obligation to name FINRA as a party if it determines that:
(A) The expungement relief and accompanying findings on which it is based are meritorious; and
(B) The expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements.
FINRA has also promulgated Rules 12805 and 13805 which set out the manner in which an arbitration panel is to address matters of expungement that are brought before it. These Rules direct the panel to:
(a) Hold a recorded hearing session (by telephone or in person) regarding the appropriateness of ex-pungement. This paragraph will apply to cases, even if a customer did not request a hearing on the merits;
(b) In cases involving settlements, review settlement documents and consider the amount of payments made to any party and any other terms and conditions of a settlement;
(c) Indicate in the arbitration award which of the Rule 2080 grounds for expungement serve(s) as the basis for its expungement order and provide a brief written explanation of the reason(s) for its finding that one or more Rule 2080 grounds for expungement applies to the facts of the case;
(d) Assess all forum fees for the hearing session in which the sole topic is the determination of the appropriateness of the expungement request against the parties requesting expungement relief.
See September 2015, FINRA Notice to Arbitrators and Parties on Expanded Expungement Guidance.
*124 III. DISCUSSION
The defendants argue that the Superior Court does not have jurisdiction to adjudicate the plaintiffs claim. The complaint does not allege the basis for the court’s jurisdiction. It also does not indicate whether the plaintiffs claim arises under the common law or a state or federal statute or regulation. Rather, following the factual allegations, the Complaint simply asks that the “Court enter an order pursuant to FINRA Rule 2080 expunging Disclosure” of the four Customer complaints against him that are disclosed in Broker-Check. This seems to presume that this court has subject matter jurisdiction under Rule 2080 to adjudicate a dispute between the plaintiff and FINRA. It does not.
This court addressed this same issue in Hundley v. Financial Industry Regulatory Authority, Inc., CA No. 14-2523-BLS 1 (Sup.Ct., May 15, 2015). In that case the court noted that Rule 2080 was only a procedural directive that told a registered representative to obtain an order from a court of competent jurisdiction, but not the basis on which such a court would adjudicate a dispute between a registered representative and another party concerning whether the registered representative was entitled to expungement.[2] Subpart (b) of Rule 2080 only explains the circumstances under which the associated person should, or need not, name FINRA as a party to the case, but offers no guidance as to who the adverse party would be in addition to FINRA, which is only the custodian of records created by the broker-dealer. In Hundley, this court provided the following explanation of why Rule 2080 cannot be the basis for jurisdiction in the Superior Court.
It seems doubtful that FINRA, a private Delaware corporation, could promulgate a rule for its members that had the effect of directing a state court to hold a particular kind of hearing or to make particular types of findings in aid of the administration of FINRA’s data base. Indeed, in cases such as the one before the court where the customer lost interest in pursuing his claim after expressing his displeasure with Hundley to his employer, it is difficult to see how this court could adjudicate the issues necessary to make the type of findings that the arbitration panel is directed to make in Rule 12805. Rule 12805 authorizes the panel to consider a representative’s request for expungement even when the complaining customer has not filed a claim, in order to provide a forum in which a broker could request relief in the nature of expungement [even when the customer was uninterested in the proceeding]. This rule seems to envision an abbreviated telephone hearing, adequate under some circumstances to rule on a request for expungement. The Superior Court generally sits to adjudicate disputes between adverse parties and relies on the adversary system for the presentation of cases. What would the Superior Court do if FINRA waived Hundley’s obligation to name it as a defendant? Could it allow Hundley to file a complaint in which there is no party defendant? Or perhaps Hundley should be required to name his customer as a defendant even though all the customer did was complain to SAI about Hundley’s conduct more than six years ago?
In the present case, NYLife settled with the customers after investigating the claims and no arbitration proceeding was begun. Nonetheless, the result is the same. The customers have no financial interest in the outcome of the claims the plaintiff asserts in the Complaint and may well be disinterested in whether BrokerCheck reports their complaints against him or not. Indeed, the Complaint does not purport to state a claim against any Customer or request any relief from the Customers. The court finds no basis on which they can be included as defendants in this case. It appears that NYLife has paid for an attorney to represent them and move for dismissal of the Complaint, but the court has grave concerns about naming a person as a defendant in a case in which no claim is asserted against him/her, thereby putting that person to the potential expense of retaining counsel to explain the nature of the proceeding and what if anything he/she must do in response to being served with a summons and complaint.
In Hundley, this court then went on to comment on a decision by a Federal District Court in a similar case:
In In the Matter of Lickless, 2011 WL 2471022 (N.D.Cal., June 22, 2011) the broker filed a complaint in a California state court seeking expungement of information concerning him in the CRD. FINRA removed the case to Federal court. The District Court, however, concluded that “[t]here is nothing in the [Securities] Act, rules or regulations that provide substantive criteria as to when ex-pungement is appropriate . . . While FINRA Rule 2080 addresses expungement, it only sets forth procedures, not a substantive duty.” Id. at 4. Therefore, the District Court held that the complaint for expungement raised no question of Federal law, and it remanded the case to the California state court for lack of Federal jurisdiction. This court agrees with the Federal court’s conclusion: Rule 2080 creates no legal obligation or duty for the court to enforce.
Since Lickless was decided, three other Federal District Courts have also concluded that Rule 2080 does not create either Federal jurisdiction or give rise to a question of Federal law and therefore, as courts of limited jurisdiction, they lacked jurisdiction to hear cases in which registered representatives sought ex-pungement of customer complaints. See Spalding v. FINRA, 2013 WL 1129396 (N.D.Ga., Mar. 19, 2013); Doe v. FINRA, 2013 WL 6099270 (C.D.Ca., Nov. 19, 2013); Flowers v. FINRA, 2015 WL 9487450 (S.D.Ca., *125 Sept. 24, 2015). While the Massachusetts Superior Court is a court of general jurisdiction, each of these cases supports this court’s view that Rule 2080 does not create any substantive rights for a court to enforce or a private cause of action in which a registered representative could bring an action against some unidentified party, in addition to FINRA, so that his right to expungement could be adjudicated in an adversary proceeding. The court does not have subject matter jurisdiction to decide a case putatively brought under Rule 2080.
Although not mentioned in the Complaint, at oral argument the plaintiff stated that he was not proceeding under a right established by Rule 2080 (or any other statute), but rather under the Superior Court’s general equitable jurisdiction. In Hundley, the court addressed this possible basis for jurisdiction as well, even though it was not raised by the plaintiff in that case. It began by noting, that, in Lickless, after the Federal District Court remanded the case to the California Superior Court, that court dismissed it. The plaintiff registered representative appealed, and the Court of Appeal reversed. See Lickliss v. Financial Industry Regulatory Authority, 208 Cal.App.4th 1125 (2012). Again, in Hundley, this court considered the implications of that opinion:
The Court of Appeal held that Lickliss did not only invoke Rule 2080 in requesting expungement, but also the court’s equitable powers. It noted, as had the Federal court, that Rule 2080(b)(1) is a procedural rule that governs when FINRA may waive the requirement that it be a party to court proceedings for expungement. The Court of Appeal commented that the facts alleged in the complaint supported Lickliss’ contention that the customer complaints against him were veiy old and stale. It then held as follows: “Exercising that right [to seek expungement] under a rule that provides no substantive criteria for delivering the remedy of expungement, Lickliss called upon the court’s inherent equitable powers to weigh the equities favoring expungement against the detriment to the public should expungement be granted. This is enough to pass demurrer.” Id. at 1135. There does not appear to be any record of what happened to Lickliss’ case thereafter.
As it did in Hundley, this court does not find that, under Massachusetts law, a court of general jurisdiction has the inherent equitable authority “to weigh equities favoring expungement against the detriment to the public should expungement be granted.” Indeed, the court has found no Massachusetts case in which a court has ordered expungement of a record maintained by a private entity. If FIINRA had created a specific right to expungement in its rules, and then refused to expunge records when a registered representative allegedly had met all of the criteria for ex-pungement, the registered representative might well be able to state a claim in the nature of breach of contract that could be adjudicated in a state court. As explained above, Rule 2080 does not do that.
If the court treats FINRA as if it were a government agency (it is certainly heavily regulated by the SEC), the court’s authority to order expungement, in the absence of a statute expressly prescribing that remedy, is very limited. In Vacaro v. Vacaro, 425 Mass. 153 (1997), the Supreme Judicial Court addressed the question of whether a probation record recording the entry of a chapter 209A restraining order could be expunged on the motion of the defendant, when the order was vacated. The SJC reviewed the statutory scheme that required retention of c. 209A records, but limited public access to them. It then explained that expungement was generally available only in two circumstances: (1) when the statutes that direct that certain records be kept also grant a court the power to expunge them (id. at 157); and (2) when the government’s retention of a record violates a person’s due process rights.[3] As noted, there is no statute, regulation or FINRA rule that directs expungement, rather Rules 2080, 12805, and 13805 only provide a mechanism for arbitration of a registered representative’s request that records be expunged.
Turning to the due process argument, the plaintiff is unable to establish that FINRA (if it constitutes a government actor in this regard) has violated the plaintiffs due process rights. FINRA is not alleged to have taken any action in this case other than posting on BrokerCheck information that was provided to it by NYLife that reflects that the plaintiffs customers made written complaints against him and NYLife settled the claims. FINRA played no role in the assertion of the complaints or their resolution. There is no allegation that FINRA took some action to cause NYLife to discharge the plaintiff or to prevent him from acting as a registered representative for some other broker-dealer. At worst, the posting of this information on a publicly available database might impair the plaintiffs reputation among potential customers. However, proving an injury to reputation is insufficient to establish a due process violation under either the United States Constitution or Article 12 of the Massachusetts Declaration of Rights. As the SJC explained in Vacaro: “The United States Supreme Court has held that a person’s reputation is not a protected liberty interest under the Fourteenth Amendment to the United States Constitution unless ‘a right or status previously recognized by state law [is] distinctly altered or extinguished.’ Paul v. Davis, 424 U.S. 693, 711 (1976).” Id. at 160; see also n.8 (“This analysis is referred to as the ‘stigma plus’ test for determining whether an injury to an individual’s reputation constitutes a deprivation of [protected] liberty or property interest”). The SJC held that it would follow the teaching of Paul “in deciding whether art. 12 has been violated.” Id. at 161.
At oral argument, the plaintiff argued that he can meet the “stigma plus” test because he is now a *126 registered representative of another broker-dealer, but subject to special supervision under a consent order that he entered into with the Securities Division. The plaintiffs argument answers itself. He is subject to special conditions under a “consent order” that he agreed to enter into in connection with an adjudicatoiy proceeding before the Securities Division of the Office of the Secretary of State conducted pursuant to G.L.c. 110A, §207A, with rights of appeal to the Superior Court under G.L.c. 30A, §14. Even if that proceeding and consent order are related to any of the Customer complaints reported in BrokerCheck, he is not subject to any limitations in his work as a registered representative because they were reported in BrokerCheck. Indeed, he would have had to disclose those complaints when he applied for association with a new broker-dealer on Form U4 whether or not they were available to the public on BrokerCheck. And, if he wished to litigate the validity of any Customer complaint in that proceeding, he had a forum affording him due process in which to do so.
At argument, the plaintiff also placed great reliance on Police Comm’r of Boston v. Municipal Court of Dorchester Dist., 374 Mass. 640 (1978), but the case is not helpful to him. In that case, the SJC held that “a Juvenile Court [has the power] to issue appropriate orders [including expungement] ancillary to their existing statutory and common-law jurisdiction.” Id. at 661 and n.15. It explained that “where a juvenile proceeding has been terminated due to the absence of any evidence of delinquency, expungement would seem justified . . . The power of a court in such circumstances is not dependent on its possession of general equity powers, but is an incident of and ancillary to the court’s original jurisdiction." Id. at 662. (Internal citations omitted, emphasis added.) Police Comm’r of Boston does not support the plaintiffs contention that the Superior Court has some freestanding equitable jurisdiction to adjudicate a case in which a party claims that, on balance, equities favor the expungement of a record maintained by a state agency where no statute provides a right to seek expungment under identified standards and there is no due process violation associated with their retention.
Moreover, the plaintiff has an adequate remedy at law. Under FINRA rules 12805 and 13805, the plaintiff has the right to demand arbitration of his claim that the records of the Customer complaints should be expunged. In such an arbitration the adverse party would be NYLife, an entity with an obvious interest in contesting the allegations concerning its conduct averred in the Complaint, but which is not a defendant in this case. A review of the Complaint clearly demonstrates that the party against whom all of the plaintiff s factual allegations are directed is NYLife, which allegedly solicited three of the Customers to lodge complaints against the plaintiff in connection with a vaguely described pyramid scheme perpetrated by the manager of its Boston office. Of course, the plaintiff cannot name NYLife as a defendant in this action because his application to be a registered representative of NYLife on Form U4, the uniform application for securities industry registration, includes a provision in which the applicant agrees to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer." A court ought not reach to find equity jurisdiction to adjudicate a claim against FINRA, which is only the record custodian, as a means to circumvent the arbitration provisions that govern the resolution of claims that the plaintiff asserts against NYLife.[4]
Accordingly, this court holds that it does not have jurisdiction in equity to consider the plaintiffs claim for expungement. And, even if equitable jurisdiction existed, the facts alleged, if true, would not support an order of expungement, and, therefore, the Complaint fails to state a claim.
IV. ORDER
For the foregoing reasons, the defendants’ motions to dismiss are ALLOWED. Final Judgment shall enter dismissing the Complaint.

 There is an allegation in the Complaint that a manager at NYLife “improperly recognizes revenues prematurely and then reverses them subsequently.” The court has difficulty understanding how this allegations ties to the plaintiffs allegations that three of the claims are false and misleading. The complaint contains additional allegations concerning records and reports that allegedly establish that the Customer claims are false or misleading, but these allegations are not material to any issue raised by the motions to dismiss.

 Indeed, Rule 2080 seems to assume that, in many instances, arbitrators or a court would have already adjudicated the grounds for expungement before the court order referenced in this rule is sought. See Section (b)(1), “Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral finding that...,” and Section (b)(2), “If the expungement relief is based on judicial or arbitral findings other than those described above . . .”

 Expungement of Chapter 209A orders has also been ordered where the wrong person was identified as the party defendant. See Commonwealth v. Alves, 86 Mass.App.Ct. 210 (2014). However, in the Complaint, the plaintiff alleges that the Customers were his customers at NYLife. Expungement has also been ordered where a restraining order entered as a result of a fraud on the court. See Commonwealth v. Adams, 65 Mass.App.Ct. 725 (2006). No court has played any role in the posting of the Customer complaints on BrokerCheck. It may also be noted that in the Appeals Court’s recent decision J.S.H. v. J.S., No. 15-P-1607 (March 1, 2017), the Court held that the “argument that the records should be expunged because there was insufficient legal or factual basis for the c. 258 order to have issued is without merit.” Slip Op. 4. That is, at best, what the plaintiff alleges in this case, i.e., the Customer complaints did not have any merit.

 It may be noted that the plaintiff served the manager of NYLife with a subpoena to appear at a deposition on October 13, 2016, before the Amended Petition for Expungement was even filed on November 2, 2016, well knowing that FINRA would move to dismiss it. The court entered an order that the deposition not go forward until after the motion to dismiss was heard.