COMMISSIONER OF PROBATION *vs.* AMANDA ADAMS.[1]

No. 04-P-1261.

Hampden. June 15, 2005. - March 10, 2006.

Present: GREENBERG, BECK, & McHUGH, JJ.

*Abuse Prevention. Domestic Violence Record Keeping System. Fraud. Practice, Civil,* Fraud, Costs. *Criminal Records. Statute,* Construction.

This court concluded that a judge has the inherent power to expunge the record of a civil abuse protection order, issued against a defendant pursuant to G. L. c. 209A, from the Statewide domestic violence registry system, in the rare and limited circumstance where the judge has found through clear and convincing evidence that the order was obtained through fraud on the court. [728-737]

A District Court judge was without statutory authority to levy costs against the Commissioner of Probation in an action initiated by a private plaintiff. [737-738]

CIVIL ACTION commenced in the Springfield Division of the District Court Department on November 1, 2002.

Motions to vacate an abuse prevention order, to destroy records of the vacated order, and for reconsideration were heard by *W. Michael Ryan,* J., and a motion for costs was also heard by him.

*David M. Lieber,* Assistant Attorney General, for the plaintiff.
*Mary Ann Chase* for the defendant.

BECK, J. In this case we are asked to decide whether a District Court judge has the inherent power to expunge a civil abuse protection order, issued pursuant to G. L. c. 209A, from the Statewide domestic violence registry when the order was obtained through fraud on the court. We hold that he does.

*Introduction.* Jake Jones and Amanda Adams were involved

---

[1] A pseudonym. The Commissioner of Probation intervened to oppose Adams's motion for expungement and is now the appellant in this matter. The original plaintiff, Jake Jones (a pseudonym), is not a party to this appeal.

in a romantic relationship. Adams ended the relationship because Jones's violence and threats of violence caused her to fear for her life and safety. On October 30, 2002, Adams obtained an emergency abuse protection order against Jones pursuant to G. L. c. 209A. (We will refer hereafter to all abuse protection orders issued pursuant to G. L. c. 209A as 209A orders.) In retaliation, Jones filed a complaint for a 209A order against Adams. At an ex parte hearing on November 1, 2002, a District Court judge entered a temporary 209A order against Adams. On November 8, 2002, following a hearing at which both Jones and Adams were present, another District Court judge extended both 209A orders for one year. The order against Jones was later made permanent. Meanwhile, Jones was charged in both the Worcester and Springfield Divisions of the District Court Department with a violation of the 209A order against him, threats to commit a crime, and criminal harassment.

On April 29, 2003, Adams filed a motion to vacate the 209A order against her and requested the destruction of all records of the order. A different District Court judge granted her motion to vacate the 209A order but denied her request to destroy the records. Adams then filed a separate motion to destroy all records of the vacated order, including the records located in the Statewide domestic violence record keeping system (system) maintained by the office of the Commissioner of Probation (commissioner) pursuant to G. L. c. 209A, § 7. See St. 1992, c. 188, § 7. The commissioner intervened and opposed the motion. The judge granted the motion, reasoning that the prejudice to Adams outweighed the State's need to maintain records, and he ordered expungement of the record from the system.

The commissioner filed a motion to reconsider and to vacate the expungement order. The judge denied the commissioner's motion, reasoning that the District Court had the inherent power to expunge the record of the 209A order against Adams where the order was obtained by fraud on the court.[2] The judge also found that Adams is an attorney, and that before either party

---

[2]The judge found that Jones made the following false statements under oath:

"1. [Adams] stated she had me under surveillance for six months."

had obtained a 209A order, her work had involved representing children. He further found that Jones falsely complained of Adams to the Board of Bar Overseers. As a result of Jones's false complaints, the terms and conditions of Adams's employment were altered to prevent her unsupervised contact with children. The judge found, but did not further specify why, Adams lost employment opportunities because of her listing in the system

"2. She stated to me that the people following me were members of organized crime."

"3. The defendant's family have many links to organized crime."

"4. Her uncle was 'Bendo,' an enforcer for the Puglione family."

"5. I broke off our relationship."

"6. She has threatened my new girlfriend."

"7. She has threatened myself."

"8. The defendant has made numerous threats using the term 'The boys owe me a favor.' "

"9. I feel the real danger is to myself as well as my children."

"10. [Adams's] threats to my children remain . . . very real."

"11. [Adams] . . .had made repeated threats such as 'Your children will suffer,' and I will make things very inconvenient for you."

"12. She had me followed for six months by members of organized crime."

"13. [Adams] has made fraudulent statements."

"14. . . . the relationship ceased after I met another woman of another race."

"15. [Adams] arrived at my residence on October, 29, 2002 clearly intoxicated . . . in a rage . . . threatening my children . . . and stating she would make my life very inconvenient."

"16. [Adams] personally sabotaged a personal injury case for my father."

"17. [Adams] does in fact misrepresent herself by using an alias in her work as a lawyer."

"18. [Adams's] HIDDEN AGENDA to settle an old vendetta is her real motivation in this case."

"19. [Adams] is using her title to further harass me."

as an abuser. The commissioner appeals, arguing that the District Court has no authority to expunge the record of a 209A order from the system. We affirm.

*General Laws c. 209A.* "Civil restraining or protective orders . . . may be entered pursuant to G. L. c. 209A, which provides that the courts have jurisdiction over abuse prevention cases as described therein. Orders for the protection of those abused may be granted under G. L. c. 209A, §§ 3, 4, and 5, and are enforced under G. L. c. 209A, § 7. By St. 1992, c. 188, § 7, the Legislature authorized and directed the Commissioner of Probation . . . to develop and implement the system, which is to contain a computerized record of the issuance and violation of *any* restraining or protective order. Section Seven . . . restrict[s] access to the records in the system to judges and law enforcement agencies." *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 155 (1997).[3] "There is nothing in St. 1992, c. 188, § 7, or in G. L. c. 209A, that permits a record to be removed or that authorizes the entry of a judicial order directing expungement of a record from the system." *Id.* at 156. "The system is designed to promote the goal of preventing abuse . . . by providing a judge (and other authorized agencies) with complete information about a defendant." *Id.* at 157.

*Fraud on the court.* The Supreme Judicial Court has long recognized the court's powers to protect its authority: "[T]he inherent powers of the courts are those whose exercise is essential to the function of the judicial department, to the

---

[3]The relevant portion of St. 1992, c. 188, § 7, provides as follows:

"The commissioner of probation is hereby authorized and directed to develop and implement a statewide domestic violence record keeping system . . . . Said system shall include a computerized record of the issuance of or violations of any protective orders or restraining orders issued pursuant to . . . [G. L. c. 209A]. Further, said computerized system shall include the information contained in the court activity record information system maintained by the office of said commissioner. The information contained in said system shall be made available to judges considering petitions or complaints pursuant to [G. L. c. 209A]. Further, the information contained in said system shall be made available to law enforcement agencies through the criminal justice information system maintained by the executive office of public safety."

maintenance of its authority, or to its capacity to decide cases. *Opinion of the Justices,* 279 Mass. 607, 613 (1932). *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 (1927)." *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981). "[E]very judge must exercise his inherent powers as necessary to secure the full and effective administration of justice." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 514 (1972).

In essence, the District Court judge found that the 209A order against Adams was obtained through fraud on the court. We recognize that the judge did not use the words "fraud on the court." However, he found that "[the nineteen] allegations by [Jones] are false and perjurious"; "[his behaviors] are indicative of an obsessive compulsion that is extremely alarming"; "[t]he seeking of the restraining order . . . is part of a larger pattern of harassment"; and "[i]n addition to filing affidavits that contain falsehoods . . . , [Jones] has falsely complained of [Adams] to the Board of Bar Overseers." In addition, the judge found that Jones obtained the ex parte order against Adams "without disclosing that [Adams] had a restraining order against him." See G. L. c. 209A, § 3 (requiring disclosure of pending abuse prevention orders). See also *Szymkowski* v. *Szymkowski,* 57 Mass. App. Ct. 284, 287 (2003) (in considering 209A complaint, judge "must be alert against allowing process to be used" for purposes of harassment). We hold that these findings support a conclusion that the order was obtained through fraud on the court.

It has been repeatedly held that courts have the inherent power to revoke judgments obtained by fraud on the court. See *Jose* v. *Lyman,* 316 Mass. 271, 280 (1944); *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.,* 418 Mass. 596, 598 (1994); *Gray* v. *Commissioner of Rev.,* 422 Mass. 666, 672-673 (1996); *Winthrop Corp.* v. *Lowenthal,* 29 Mass. App. Ct. 180, 184 (1990). "Fraud on the court implies corrupt conduct and embraces only that species of fraud which does, or attempts to, defile the court itself." *Munshani* v. *Signal Lake Venture Fund II, LP,* 60 Mass. App. Ct. 714, 718 (2004), quoting from *Winthrop Corp.* v. *Lowenthal, supra.* "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has

sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. at 598, quoting from *Aoude* v. *Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

A court must be sufficiently empowered in order to prevent fraud on the court, because allowing the court to be manipulated by fraud poses a danger to its authority. See *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, *supra*; *Gray* v. *Commissioner of Rev.*, *supra*. Thus, the Supreme Judicial Court has held that "[w]hen a fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, *supra*.

Fraud on the court has been found in cases where a party has perjured him or herself to the court and the court has relied upon the fabrications when reaching a judgment. See *Matter of Neitlich*, 413 Mass. 416, 423 (1992) (fraud on the court where attorney made false statement with intent to deceive court); *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. at 598- 599 (fraud on the court where party forged letter, proffered forged letter in response to interrogatories, and testified under oath as to authenticity of letter); *Munshani* v. *Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. at 719-720 (fraud on the court where party fabricated an electronic mail message [e-mail], submitted fabricated e-mail with false affidavit to court, and attempted to hide fabrication from court for several months). In this case, Jones committed fraud on the court through his calculated pattern of false statements to the court, which influenced the District Court judge's decision to issue a 209A order against Adams. The District Court judge found that Jones made nineteen separate false statements under oath in four different affidavits submitted to the court, and that Jones's application for a 209A order against Adams was part of a larger pattern of harassment and lies to the court and to the Board of Bar Overseers.

When faced with a finding of fraud on the court, "[t]he judge has broad discretion to fashion a judicial response warranted by the fraudulent conduct." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. at 598. The judge should seek "to secure the full and effective administration of justice." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. at 514. Judges may exercise their inherent powers to fashion remedies that not only realistically protect the integrity of the pending litigation, but that also "send an appropriate message to those who would so abuse the courts of the Commonwealth." *Munshani* v. *Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. at 721. When courts invoke their inherent authority to fashion remedies to respond to fraud on the court, "lack of statutory authorization . . . is immaterial." *Brach* v. *Chief Justice of the Dist. Ct. Dept.*, 386 Mass. 528, 535 (1982). Such power exists "without statutory authorization and cannot be restricted or abolished by the Legislature." *Gray* v. *Commissioner of Rev.*, 422 Mass. at 672, quoting from *Brach* v. *Chief Justice of the Dist. Ct. Dept.*, *supra.* "We examine judicial responses to findings of fraud on the court for an abuse of discretion." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, *supra.*

It is well established that, upon a finding of fraud on the court, judges may enter default judgments, dismiss claims, or dismiss entire actions. See *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. at 598-599; *Munshani* v. *Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. at 721. In cases where an attorney has committed fraud on the court, judges have used their inherent authority to suspend or disbar the attorney. See *Matter of Neitlich*, 413 Mass. at 423-425; *Matter of Otis*, 438 Mass. 1016, 1017 (2003). Common to these cases is the notion that judges have the authority to fashion remedies that will protect the integrity of the courts, and that will discourage the public from attempting to use the courts to perpetuate fraudulent schemes. See *Munshani* v. *Signal Lake Venture Fund II, LP*, *supra.*

In this case, vacating the 209A order against Adams is insufficient to protect the integrity of the courts and does not send an appropriate message to the public. Vacating the order leaves a record of the order in the system. See St. 1992, c. 188, § 7. Not

only does this leave a permanent mark against Adams, but it also leaves, in perpetuity, a record of a fraudulently obtained court order. Although labels such as "dismissed" or "closed" are applied to records in the system, no explanation is provided as to *why* the order was dismissed or the case closed. Many vacated 209A orders are vacated because of the victim's failure to prosecute. See *Vaccaro* v. *Vaccaro*, 425 Mass. at 158 n.5. Law enforcement officials will not be notified that the order was vacated because it was obtained by fraud on the court. Rather, they may presume it was vacated because of the victim's failure to prosecute or because of insufficient evidence. The perpetuation of a fraud amounts to a defiling of the court itself when law enforcement officials rely on inaccurate information produced by the court. See *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. at 184.

Just as vacating the order is an insufficient remedy in those circumstances, sealing the record of the order is equally inadequate. When records are sealed, they do not disappear. While sealed records become unavailable to the public, "the raw data continues to be available to law enforcement officials (police, probation officers, and courts)." *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 356 (1995). Law enforcement officials would retain access to information that is inaccurate and misleading and was obtained through fraud on the court. Therefore, sealing would not remedy the defiling of the court.

Adams argues that *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.*, 374 Mass. 640, 661 (1978), controls the outcome of this case. In that case, the Supreme Judicial Court concluded that the "power to order expungement or its equivalent is a power that properly may be exercised by the courts of the Commonwealth as a necessary adjunct to their exercise of judicial power." *Ibid.* (citation and footnote omitted). "The power properly may be exercised where the utility of the records for law enforcement purposes is likely to be minimal or nonexistent." *Ibid.* In that case, the court held that a Juvenile Court judge had the inherent power to order the police department to expunge the arrest records of a juvenile after a delinquency proceeding against the juvenile had been dismissed with prejudice. *Id.* at 641-642. In doing so, the court reasoned

that the unnecessary harm to the juvenile outweighed the government's interest in maintaining and disseminating records of a dismissed case. *Ibid.*

The commissioner argues that this case is controlled by *Vaccaro* v. *Vaccaro*, 425 Mass. at 157-159, in which the Supreme Judicial Court held that the District Court had no statutory or inherent power to order expungement of a c. 209A record from the system. In order to understand that holding, however, it is crucial to understand the facts of that case. There, the plaintiff, Mrs. Vaccaro, obtained an ex parte temporary protective order against the defendant, her husband, pursuant to G. L. c. 209A, § 5. *Id.* at 154. At a subsequent hearing, Mrs. Vaccaro testified to incidents of the defendant's verbal and physical abuse and her ongoing fear that he would harm her. *Ibid.* The District Court judge found that the plaintiff was genuinely fearful, but that there was insufficient evidence to justify the continuation of the protective order. *Ibid.* Therefore, the judge vacated the 209A order and directed that the record be expunged from the system. *Id.* at 155. On appeal, the Supreme Judicial Court held that "no power to order expungement can be implied." *Id.* at 157. The court reasoned that the purpose of the system is to provide a judge with complete information about a defendant, and to allow a judge to identify subsequent situations in which a subsequent plaintiff may face a particularly heightened degree of danger. *Ibid.* See *Commonwealth* v. *Gavin G.*, 437 Mass. 470 (2002) (where case against juvenile was dismissed due to Commonwealth's failure to prosecute, Juvenile Court has no inherent authority to expunge records maintained pursuant to statutory scheme where statute does not authorize expungement).

In *Vaccaro* v. *Vaccaro*, the Supreme Judicial Court distinguished *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.*, *supra*, on the ground that the *Vaccaro* case was "not a case where there is 'little or no valid law enforcement purpose . . . served by the maintenance and dissemination of . . . records.'" 425 Mass. at 158, quoting from *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.*, 374 Mass. at 642. In enacting G. L. c. 209A, the Legislature was concerned with the prevalence of domestic abuse and wanted to ensure that abusers were easily identifiable by law enforcement

officials when they either violated 209A orders or committed other crimes in the future. *Id.* at 157-158. The Legislature specifically omitted an expungement provision in the statute because it did not want vacated 209A orders to go unnoticed. See *id.* Recognizing the realities of domestic abuse, the court noted that many victims initially obtain 209A orders but then either fail to prosecute them or, as in *Vaccaro*, fail to present enough evidence to allow a court to continue the issuance of one. See *Vaccaro* v. *Vaccaro*, 425 Mass. at 158 n.5. Therefore, although many 209A orders would likely be vacated, the Legislature determined that records of such orders would still provide valuable information to law enforcement officials. *Ibid.*

In *Vaccaro*, the Supreme Judicial Court also distinguished *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.*, *supra*, by pointing out that while there is no statutory authority requiring the maintenance of juvenile arrest records, there is an express legislative directive to implement the domestic violence registry system. *Vaccaro* v. *Vaccaro*, 425 Mass. at 158. That distinction is immaterial to this case because when courts invoke their inherent authority to fashion remedies to respond to fraud, "lack of statutory authorization . . . is immaterial." *Brach* v. *Chief Justice of the Dist. Ct. Dept.*, 386 Mass. at 535. See *Gray* v. *Commissioner of Rev.*, 422 Mass. at 672. The District Court judge in the *Vaccaro* case was not invoking the court's inherent authority to remedy fraud on the court; therefore, the legislative directive omitting a provision for expungement controlled. Here, however, there has been fraud on the court, and the judge's inherent power to fashion an appropriate remedy is not vitiated by the statute's omission regarding expungement. See *Commonwealth* v. *S.M.F.*, 40 Mass. App. Ct. 42, 43-45 (1996) (where sealing statutes are inapplicable and no statutory remedy is therefore available, trial courts may invoke inherent power to order expungement). Contrast *Commonwealth* v. *Roe*, 420 Mass. 1002, 1002-1003 (1995) (even though charges against defendant dismissed for want of prosecution, court lacked inherent authority to expunge criminal records of adult because legislative scheme allows such records to be sealed).

Allowing expungement in this case does not offend the

Supreme Judicial Court's rationale in *Vaccaro*.[4] As the court stated in that case, the purpose of G. L. c. 209A is to protect prospective victims. *Vaccaro* v. *Vaccaro*, 425 Mass. at 157. In the case before us, Adams *was* the victim of abuse. The 209A order against her was obtained fraudulently as a means of retaliation against her for seeking a 209A order against Jones, and the court was used as a mechanism to perpetrate the fraud. Compare *Jose* v. *Lyman*, 316 Mass. at 280 (use of court's inherent powers permissible to prevent fraud on the court), and *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. at 184 (same), with *Vaccaro* v. *Vaccaro*, 425 Mass. at 158, and *Commonwealth* v. *Gavin G.*, 437 Mass. at 473. Expunging Adams's record not only remedies any harm suffered by her, but it also sends the appropriate message to the public: the courts will not be used as a vehicle for abusing G. L. c. 209A as a means of harassment through the seeking and obtaining of fraudulent 209A orders. Moreover, the court in *Vaccaro* stated that these orders should not be expunged because vacated orders serve an informational purpose. *Vaccarro* v. *Vaccarro*, 425 Mass. at 158. In contrast, the order in this case serves no informational purpose. Because the order was obtained through fraud on the court, a subsequent discovery of the order in the system by a law enforcement official will provide incorrect information to the official. Adams has not posed any threat to Jones, and any contrary record will impede the administration of justice.

*Balancing test.* The Supreme Judicial Court has cautioned that, before a court may invoke its inherent power to expunge a record, it must ensure that the government's interest in maintaining the record does not outweigh the harms suffered by the maintenance of the record. *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.*, 374 Mass. at 658-661. As in that case, the resulting harm here from the maintenance and dissemination of the fraudulent 209A order against Adams outweighs the government interest in keeping the record in the system. We have already discussed how the court's integrity and ability to secure the full administration of justice is severely

---

[4]In fact, leaving the record on the system would reward Jones in his attempt to harass and destroy Adams. Refusal to expunge the record would fail to discourage others from committing similar frauds on the court.

weakened when a court order obtained through fraud remains a record available to and perhaps relied upon by law enforcement officials. Contrast *Vaccaro* v. *Vaccaro*, 425 Mass. at 157. Moreover, the harm suffered by Adams is obvious. Without expungement, she will suffer from a blemish on her record for the rest of her life. The District Court judge found that the existence of this record already has had a detrimental impact on the terms and conditions of her employment.[5] The existence of a record can also adversely affect Adams if she is involved in any future 209A proceeding. See *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638 (1998). Furthermore, the existence of an order can have a negative effect on her during future bail proceedings. See *Frizado* v. *Frizado*, 420 Mass. 592, 594 (1995).

The potential harm to the courts and to Adams outweighs the governmental interest in maintaining and disseminating the fraudulently obtained 209A order, because the order contains absolutely no informational purpose. Contrast *Vaccaro* v. *Vaccaro*, 425 Mass. at 157; *Commonwealth* v. *Gavin G.*, 437 Mass. at 473. Because the 209A order was obtained by fraud on the court, it does not offer any assistance to law enforcement officials. If anything, the existence of a vacated 209A order that was obtained through fraud is unhelpful because it provides false information to law enforcement. This impedes the fair administration of justice.

The commissioner also argues that the government has an interest in conserving resources and in not having to defend against frivolous attempts to expunge records from the system. We do not find this argument sufficiently persuasive to outweigh the egregious harms suffered by the courts and c. 209A defendants if expungement were not allowed in those limited circumstances. Courts must afford a hearing to c. 209A defendants within ten business days of the entry of a temporary order. G. L. c. 209A, § 4. An additional hearing is required in

---

[5]The commissioner suggests that the judge's findings were unsubstantiated. He argues that the record in the system did not harm Adams because it was Jones who notified Adams's employer of the 209A order. The commissioner has failed to show that the judge's findings of fact were clearly erroneous. See Mass.R.Civ.P. 52(c), as appearing in 423 Mass. 1408 (1996).

order to extend the length of a 209A order beyond one year. G. L. c. 209A, § 3. Should a c. 209A defendant claim that a plaintiff is pursuing the order through fraud on the court, he or she will have adequate opportunity to assert that argument at either or both of these hearings. If the judge does not make a finding of fraud on the court, the defendant will have no basis for a subsequent motion to expunge the record of the order from the system. Nothing in G. L. c. 209A, or in this opinion, requires a hearing on a defendant's motion for expungement. Furthermore, the "clear and convincing evidence" standard of proof required for demonstrating a fraud on the court finding will necessarily limit the number of instances when expungement may even be considered as an appropriate remedy.

We therefore conclude that a judge has the inherent authority to expunge a record of a 209A order from the Statewide domestic violence registry system in the rare and limited circumstance that the judge has found through clear and convincing evidence that the order was obtained through fraud on the court. Because the District Court judge's finding of fraud on the court was not an abuse of discretion, we hold that expungement of the order from the system in this case was appropriate.[6] Cf. *Corrado* v. *Hedrick*, 65 Mass. App. Ct. 477 (2006).

*Costs.* The commissioner also appeals from the judge's order that the commissioner reimburse Adams for costs in the amount of $500 due to the commissioner's failure to attend a hearing at the initial hearing on her motion to destroy all copies of the 209A order.[7] We conclude that the judge erred because he was without statutory authority to order the payment of costs in these circumstances.

"[C]osts against the Commonwealth, its officers, and agencies shall be imposed only to the extent permitted by law." Mass.R. Civ.P. 54(d), as appearing in 382 Mass. 821 (1980). "Consequently, express statutory authority is required to levy costs on

---

[6]As we hold that fraud on the court allows expungement of Adams's record from the system, we need not address Adams's due process argument.

[7]According to the judge's findings, "[c]ounsel for the commissioner acknowledged receipt of notice of the first hearing but was unable to explain why the commissioner did not appear in opposition."

the Commonwealth." *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 468 (1997). See *Broadhurst* v. *Director of the Div. of Employment Security,* 373 Mass. 720, 722 (1977); *Ware* v. *Commonwealth,* 409 Mass. 89, 90 (1991). "This requirement arises out of the general rule of law that the Commonwealth 'cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute.' " *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. at 468, quoting from *General Elec. Co.* v. *Commonwealth,* 329 Mass. 661, 664 (1953).

The District Court judge did not ground his decision to levy costs against the commissioner on any express statutory authority. Adams argues that G. L. c. 261, § 14, authorizes the judge to levy such costs. That statute provides: "In civil actions and in proceedings which are instituted by, or in the name of, the commonwealth, and not at the relation, in behalf, or for the use, of a private person, the commonwealth shall be liable for costs as is an individual." G. L. c. 261, § 14. It has been repeatedly held that § 14 provides for the recovery of costs in civil actions that are initiated by the Commonwealth and does not allow for recovery of costs from the Commonwealth in civil actions initiated by a private plaintiff. See *Broadhurst* v. *Director of the Div. of Employment Security,* 373 Mass. at 724; *Ware* v. *Commonwealth,* 409 Mass. at 92; *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. at 468-469. The present action was initiated by a private plaintiff. Adams's motion seeking an order of expungement necessarily compelled the commissioner to intervene and oppose the motion. Therefore, G. L. c. 261, § 14, does not authorize the District Court judge to levy costs against the commissioner.

That portion of the order dated February 27, 2004, awarding costs against the Commissioner of Probation is vacated. In all other respects, the order is affirmed.

*So ordered.*