MARY SMITH[1] *vs.* STEPHEN JONES.[2]

No. 05-P-283.

Essex. March 21, 2006. - August 17, 2006.

Present: COWIN, DREBEN, & MILLS, JJ.

*Abuse Prevention. Protective Order. Domestic Violence Record Keeping System. Criminal Records. Words, "Abuse."*

While evidence presented in an ex parte abuse prevention proceeding was adequate to justify the judge's issuance of a temporary order, the evidence presented at the hearing to extend the order was not sufficient to establish that abuse had occurred, that the defendant had placed the plaintiff in fear of imminent serious physical harm, or that the defendant had caused the plaintiff to engage in sexual relations by force, threat, or duress [132-137]; therefore, this court vacated the extension order but, in the absence of any evidence that the plaintiff had obtained the order through a fraud on the court, was not authorized to order expungement of the records regarding the order from the Statewide domestic violence record-keeping system [137-138].

CIVIL ACTION commenced in the Lawrence Division of the District Court Department on August 23, 2004.

A request for a restraining order was heard by *Barbara Savitt Pearson*, J., and an order of extension was entered by *Stephen S. Ostrach*, J.

*James B. Krasnoo* for the defendant.

*Katie Cook Rayburn* for the plaintiff.

COWIN, J. We address again efforts to obtain relief in difficult personal circumstances within the limited provisions of G. L. c. 209A (governing certain acts between family or household members that constitute "abuse" as therein defined). The defendant, Stephen Jones, appeals from both an ex parte abuse

[1]By her mother.

[2]Because the parties are minors, we employ pseudonyms. See G. L. c. 209A, § 8.

prevention order and a subsequent extension order that required that he refrain from contact with the plaintiff, Mary Smith. He asserts that the evidence was insufficient in each proceeding to support a finding of abuse as contemplated by the statute, and consequently that the judges below lacked authority to issue protective orders. We agree in part. While the evidence presented initially was adequate to justify an ex parte order, the evidence at the extension hearing was not sufficient to establish that abuse had occurred.

1. *Background.* We recite the material facts as they appear from the findings below or otherwise from the record. The plaintiff and the defendant met in the sixth grade and, in July, 2002, when each was thirteen, began a dating relationship. In March, 2003, their relationship became intimate, the intimacy continuing when they entered a new school in September, 2003. The sexual aspect of the relationship was voluntary, although at least some of it came about because the plaintiff desired to accommodate the defendant. In January, 2004, the couple broke up, but continued periodic sexual activity until the defendant left school in March, 2004. The night before the defendant left school, he sent the plaintiff an electronic mail message (e-mail) that he wished he could "stab [her] in the heart." However, the plaintiff never took the threat seriously, and never experienced concern that the defendant would actually do her physical harm.

During the dating relationship, the plaintiff suffered from depression and was treated for the condition by psychologists. In December, 2003, the plaintiff wrote an English paper describing her condition and referring to the support she received from the defendant. Nevertheless, after the relationship ended, the plaintiff reflected in her journal that the sexual activity had been "painful" and "wrong," and that the defendant's convincing her that the activity was the right thing to do was rape. In August, 2004, by which time the parties' sexual relationship had been over for five months, the plaintiff heard from a friend that the defendant would be attending a school located in the same community as her own school. She discussed this with her psychologist, decided

to tell her mother of the sexual nature of the previous relationship,[3] and did so on August 18, 2004.

On August 23, 2004, the plaintiff's mother filed, on behalf of the plaintiff, a "Complaint for Protection From Abuse" pursuant to G. L. c. 209A. An ex parte hearing, at which the plaintiff testified, was held on the complaint that same day. Although much of the tape of the hearing is inaudible, the record does contain testimony by the plaintiff that the defendant had sent the e-mail stating that he wished he could stab her in the heart. She testified also that she feared that the defendant would embarrass her at her school. On the strength of this testimony, a judge issued a temporary abuse prevention order.

On September 3, 2004, a hearing was conducted before a second judge to determine whether the order should be extended. The plaintiff's English paper and the journal entry referred to above were introduced in evidence. In addition, she testified that she feared that the defendant might come to her school, and that being around him caused her to become so nervous that she physically shook. She expanded on this by explaining that, while the defendant had not harmed her or threatened to do so, she was afraid that he could "humiliate" her, say "terrible things" to her, tell others "terrible" and "humiliating" things about her, and thus upset her and "put [her] into a bad mental state." She admitted that she did not fear physical harm at the hands of the defendant as a result of his e-mail. There was no evidence either that the couple had had contact since March, 2004, or that the defendant had given any indication that he would contact the plaintiff in the future.

The judge found that the plaintiff had a reasonable fear that the defendant, once he entered the nearby school, would attempt to resume their sexual relationship, and concluded that this would constitute "abuse" as defined in G. L. c. 209A, § 1, because, given the plaintiff's age, the sexual activity would be nonconsensual. See G. L. c. 265, § 23. He stated in addition that there was "some risk of potential future physical abuse,

---

[3]The plaintiff's mother knew that the young people had been dating on a regular basis, but was not aware that the relationship had become intimate.

based on the throat-grabbing at the dance[4] and the Internet threat." Accordingly, the judge extended the order for one year, a period that ended on September 3, 2005.

2. *Discussion.* Pursuant to G. L. c. 209A, §§ 3 and 4, a judge may impose certain orders, among others, requiring that a defendant refrain from abusing, refrain from contacting or merely stay away from a plaintiff upon a showing by a preponderance of the evidence, see *Iamele* v. *Asselin*, 444 Mass. 734, 736 (2005), that he or she is "suffering from abuse." The complainant must establish facts that justify both the issuance and the continuance of an order. *Ibid.*, citing *Frizado* v. *Frizado*, 420 Mass. 592, 596 (1995). The statute was enacted to address the problem of domestic violence, see *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 886 (2002). "Violence brought on by, or exacerbated by, familial relationships was the 'mischief or imperfection to be remedied' by c. 209A." *Turner* v. *Lewis*, 434 Mass. 331, 334 (2001). The statute is not a general catch-all for the regulation of all human relationships that run into difficulty, no matter how compelling some of those difficulties may objectively be or subjectively seem.

At the outset, the statute applies only to acts "between family or household members," a class that includes individuals who "are or have been engaged in a substantive dating or engagement relationship." G. L. c. 209A, § 1(*e*), as inserted by St. 1990, c. 403, § 2. The defendant acknowledges that he and the plaintiff had a substantive dating relationship. Once that is established, the question is whether "abuse" has been demonstrated. "Abuse" is a defined term that further restricts the statute's reach. It consists of "the occurrence of one or more of the following acts between family or household members: (*a*) attempting to cause or causing physical harm; (*b*) placing another in fear of imminent serious physical harm; (*c*) causing another to engage involuntarily in sexual relations by force, threat or duress." While only G. L. c. 209A, § 1(*b*), requires explicitly that the harm feared be "imminent," we have interpreted §§ 1(*a*) and 1(*c*) to require imminent physical or sexual harm as well. See *Dollan* v. *Dollan*, 55 Mass. App. Ct. 905, 906 (2002) ("We also read the Legislature's

---

[4]No evidence regarding a "throat-grabbing" incident at a dance was offered, although it was referred to in final argument.

language in § 1 ['attempting,' 'placing,' and 'causing'] as reveal-ing an intent to limit the definition of abuse to the present tense"). A determination whether harm is imminent, however, may involve an inquiry whether the defendant has engaged in abusive behavior in the past, and whether such behavior is likely to resume. See, e.g., *Litchfield* v. *Litchfield*, 55 Mass. App. Ct. 354, 356 (2002); *Dollan* v. *Dollan, supra* at 906; *Corrado* v. *Hedrick*, 65 Mass. App. Ct. 477, 483 (2006).

We turn to the record before us to decide whether the plaintiff satisfied her burden of proof under the precise statutory defini-tions at either the ex parte or the extension hearing. Notwith-standing that both the ex parte and the extension orders have expired, the appeal is not moot. The defendant "could be adversely affected by [the orders] in the event of future applica-tions for an order under G. L. c. 209A or in bail proceedings . . . [and] has a surviving interest in establishing that the orders were not lawfully issued, thereby, to a limited extent, removing a stigma from his name and record." *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638 (1998) (citation omitted).[5]

A plaintiff may obtain a temporary protective order in an ex parte proceeding, provided that the defendant is given an op-portunity for an evidentiary hearing within ten court business days after the ex parte order is entered. See G. L. c. 209A, § 4. In order to obtain an ex parte order, the plaintiff must demonstrate a "substantial likelihood of immediate danger of abuse." G. L. c. 209A, § 4, as amended by St. 1990, c. 403, § 4. To extend an ex parte order, the plaintiff must show that he or she is suffering from abuse, or that a protective order is "necessary to protect her from the likelihood of 'abuse.' " *Iamele* v. *Asselin*, 444 Mass. at 739. See G. L. c. 209A, § 3; *Frizado* v. *Frizado*, 420 Mass. at 596. No presumption arises from the fact that a prior order has issued; it is the plaintiff's burden to establish that the facts that exist at the time

_____

[5]The limit on the restrained party's ability to remove the "stigma" arises from the fact that, while vacated orders are removed from records of involved law enforcement agencies, they are not removed from the Statewide domestic violence record-keeping system. *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. at 638. But see *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 737 (2006) (expungement authorized where order obtained by fraud on the court).

extension of the order is sought justify relief. See *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 889-890.

At the ex parte hearing, evidence of the defendant's e-mail statement that he wished he could stab the plaintiff in the heart was introduced. Much of the plaintiff's testimony is inaudible on the tape recording, and is therefore unavailable. As appellant, it is the defendant's obligation to provide an adequate record for review, see *Commonwealth* v. *Robicheau*, 421 Mass. 176, 184 n.7 (1995). The defendant, who obviously was not present himself or via counsel at the ex parte hearing, has done all that could be expected to resurrect the testimony.[6] Even as supplemented, the transcript does not contain the plaintiff's statement that she did not believe that the defendant would actually harm her. In addition, when the judge asked the plaintiff whether she was afraid that the defendant would "come after her," the plaintiff's response was ambiguous at best.[7] Given what could have been a threat, together with the plaintiff's uncertain response thereto, the judge permissibly concluded that there was a substantial likelihood of abuse as defined in G. L. c. 209A, § 1(*b*) ("placing another in fear of imminent serious physical harm"), and justifiably issued an ex parte order.

We acknowledge the implicit concern of the judge who presided at the hearing on the application to extend the order that, given their history, the renewed proximity of the parties presaged possible future unpleasantness or worse. That, however, does not translate by itself into a basis for G. L. c. 209A relief, and we are not persuaded by the evidence that the plaintiff sustained her burden under the statute.

---

[6] In connection with the record on appeal, counsel conferred with each other, and presented to the ex parte motion judge the recollections of the plaintiff's mother. The judge understandably had no memory of the precise testimony, but indicated that "the corrections or fill-ins . . . make sense and are not contrary to my general recollection."

[7] The transcript reads:

> THE COURT: "So you're not afraid that he's going to come after you now, or are you —"

> THE PLAINTIFF: "Yeah, I (inaudible)."

There has been no showing that the defendant attempted to cause or caused the plaintiff physical harm. See G. L. c. 209A, § 1(*a*). The closest that the testimony comes to such a proposition is the plaintiff's statement that, when the parties engaged in anal intercourse, she experienced pain. We do not believe that pain associated with sexual activities in which the parties voluntarily engaged (see *infra*) constitutes "physical harm" as contemplated by the Legislature in the statutory definition of "abuse." Nor could the judge permissibly rely on the alleged "throat-grabbing" incident, where there was no evidence offered on the subject (it being addressed only in final argument). Furthermore, neither the judge nor the plaintiff appears to have treated the case as one embraced by § 1(*a*).

Nor was there evidence that the defendant placed the plaintiff in fear of imminent serious physical harm. See G. L. c. 209A, § 1(*b*). In contrast to the evidence at the ex parte hearing, the plaintiff admitted that she did not interpret the defendant's stated desire to stab her in the heart as a threat to be taken literally. She testified instead that the defendant had not physically harmed her, nor had he threatened to do so. Accordingly, there was no basis for a finding of actual apprehension on the part of the plaintiff, a prerequisite for relief under § 1(*b*). See *Iamele* v. *Asselin*, 444 Mass. at 737. While inquiry in these cases often focuses on whether a given plaintiff's fear is reasonable, see *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 486 (2005), there must be at least fear or apprehension of some sort to begin with, or the definition set forth in § 1(*b*) is not satisfied.

Instead, what the plaintiff described was a fear that the defendant would embarrass or humiliate her, thereby causing her mental or emotional harm. She testified also that the defendant's presence caused her to shake out of nervousness. However, "[g]eneralized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress from vexing but nonphysical intercourse, when there is no threat of imminent serious physical harm, does not rise to the level of fear of imminent serious physical harm." *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. at 639. While "physical manifestations of emotional

harm resulting in the aggravation of preexisting medical conditions" might in some circumstances constitute "physical harm," see *Larkin* v. *Ayer Div. of the Dist. Ct. Dept.*, 425 Mass. 1020, 1020 (1997), the physical manifestation of emotional distress to which the plaintiff testified here is not the physical harm to which the statute is addressed.

The principal legal foundation of the judge's decision is found in G. L. c. 209A, § 1(*c*), and is embraced by his determination that there is "ample basis to conclude that the plaintiff currently and reasonably fears [the] defendant may attempt to resume their sexual relationship. Given her age, that would be involuntary, and so abuse." General Laws c. 209A, § 1(*c*), as amended by St. 1990, c. 403, § 2, defines "abuse" as "causing another to engage involuntarily in sexual relations by force, threat or duress." The judge appears to have equated the term "involuntary" with "nonconsensual."

Of course the plaintiff, then less than sixteen, was legally incapable of "consenting" to sexual intercourse. See G. L. c. 265, § 23; G. L. c. 277, § 39. That does not mean, however, that the plaintiff necessarily participated in the sexual activities involuntarily. The plaintiff's testimony, together with her adolescence, make the question whether sex with the defendant was in fact voluntary difficult to answer. She testified that she did not enjoy certain aspects of the sexual activity, and in retrospect should not have permitted herself to become so involved. On the other hand, she also testified that she continued to participate in order to please the defendant. Considering peer and other pressures to engage in sexual experiences to which young people are often subjected, the concept of voluntariness can become considerably ambiguous.

It is unnecessary, however, to resolve the question on this record. In our view, the outcome does not turn on an absence of voluntariness per se, but rather on the reason for arguably involuntary sexual relations. General Laws c. 209A, § 1(*c*), is explicit that "abuse" in this context is causing engagement in sexual relations "by force, threat or duress." The record, even construed in the light most favorable to the plaintiff, contains no basis for a finding that this occurred. There is no evidence that the defendant

physically forced the plaintiff, or that he threatened her, or that he left her with no reasonable choice but to engage in sexual relations. See *Commonwealth* v. *Perl*, 50 Mass. App. Ct. 445, 446-450 (2000) (duress requires immediate threat, no reasonable opportunity to escape, and no other choice in the circumstances). In the absence of involuntary sex induced by force, threat or duress, the relationship cannot be regulated under G. L. c. 209A.

The distinction is not arbitrary. The statute is devoted to the curbing of domestic violence, of which compelled sexual relations is one aspect. Apart from the e-mail discussed above, there is no evidence of violence or proposed violence in the parties' past relationship. Nor is there evidence that the defendant might attempt to force involuntary sex on the plaintiff in the future. In fact, there was no evidence that he had contacted her in any way between March, 2004, and the continuance hearing in September, 2004. The defendant's past acts may be punishable under the criminal law; they do not, for the reasons stated, justify application of the narrowly defined provisions of G. L. c. 209A.

3. *Expungement.* The defendant has requested that, in the event an order is vacated, we direct that the records regarding such order be expunged from the Statewide domestic violence record-keeping system because they provide no reliable information and therefore harm the defendant without any concomitant benefit to law enforcement or some other public interest.[8] Briefs in this case were filed before issuance of this court's decision in *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 737 (2006), wherein we stated: "[A] judge has the inherent authority to expunge a record of a [c.] 209A order from the Statewide domestic violence registry system in the rare and limited circumstance that the judge has found through clear and convincing evidence that the order was obtained through fraud on the court."

That is not the case here. "A 'fraud on the court' occurs

---

[8]General Laws c. 209A, § 7, third par., directs only that records in the possession of "the appropriate law enforcement agency" be destroyed, and does not mandate that records be removed from the Statewide domestic violence registry.

where . . . a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.,* 418 Mass. 596, 598 (1994), quoting from *Aoude* v. *Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989). That a plaintiff presents a claim that fails does not mean that she has perpetrated a fraud on the court, and nothing that has occurred in this proceeding remotely resembles such behavior. This being the case, the limited exception discussed in *Commissioner of Probation* v. *Adams, supra,* which is based on the inherent authority necessary for the judiciary to function, *id.* at 729-731, is inapplicable. The statutory requirement that there be maintained a Statewide registry of all abuse prevention orders, see G. L. c. 209A, § 7, thus controls, and we are not authorized to override it. See *Vaccaro* v. *Vaccaro,* 425 Mass. 153, 157-159 (1997). The defendant's position is not aided by *Police Commr. of Boston* v. *Municipal Ct. of the Dorchester Dist.,* 374 Mass. 640, 661 (1978), where, while expungement of juvenile arrest records was permitted on the facts of that case, maintenance of the records in question was not required by statute but merely by choice of the police department.

4. *Disposition.* The ex parte abuse prevention order is affirmed. The extension order is vacated. The District Court shall notify the appropriate law enforcement agency of this decision in accordance with G. L. c. 209A, § 7, third par., and shall direct that agency to destroy all record of the vacated order.

*So ordered.*