NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-1537                                    Appeals Court

M.C.D.  vs.  D.E.D.


No. 15-P-1537.

Essex.     June 2, 2016. - September 23, 2016.

Present:  Kafker, C.J., Hanlon, & Neyman, JJ.


Abuse Prevention.  Domestic Violence Record Keeping System. Fraud.  Practice, Civil, Notice of appeal, Fraud.



Complaint for protection from abuse filed in the Essex Division of the Probate and Family Court Department on December 15, 2014.

A motion to vacate the abuse prevention order and to expunge the record, filed on March 6, 2015, was heard by Theresa A. Bisenius, J.


Natalie L. Lorenti, Special Assistant Attorney General (Sarah M. Joss with her) for Commissioner of Probation.
D.E.D., pro se.


HANLON, J.  In this cross appeal, the Commissioner of

Probation (commissioner) appeals from an order of a Probate and

Family Court judge to expunge a G. L. c. 209A abuse prevention

order (209A order) entered against the defendant.  The

commissioner challenges the judge's findings that the plaintiff's allegations of abuse were knowingly false and constituted a fraud on the court, as explained in Commissioner of Probation v. Adams, 65 Mass. App. Ct. 725, 729-730 (2006). We agree that the judge's subsidiary findings were insufficient to support her ultimate finding of fraud on the court, and we vacate the order for expungement.[1]

Background. The plaintiff obtained the ex parte 209A order against the defendant on December 15, 2014. She alleged in her affidavit that, on December 3, 2014, the defendant had beaten her and that she was in fear of him. At the ex parte hearing, the plaintiff barely spoke, but her lawyer told the judge that his client had been beaten and that she was extremely reluctant to talk about the incident, but that the people who had treated her medically, as well as members of her family, believed that her injuries could not have been the result of a fall and were, in fact, the result of serious abuse.[2]

---

[1] The defendant below appealed only the denial of his motion to dismiss the commissioner's appeal as untimely. He does not press that issue here, discussed infra.

[2] Specifically, plaintiff's counsel told the judge that his client had been beaten "pretty badly [and that the defendant had] punched her in the face, grabbed her arms, bruising them. Her ankle was injured in the process. Uh, he punched her really badly. I mean, the -- the injuries are horrific. . . . She's got a big black eye. All of her arms are bruised. Her ankle was bruised." Plaintiff's counsel also said that the plaintiff had been admitted first to the Salem Hospital intensive care

On December 22, 2014, the day scheduled for the hearing after notice, the plaintiff did not appear and an associate of her lawyer appeared for her. The defendant was represented by counsel, who immediately informed the judge that her client was "an Assistant City Solicitor for [a city in Massachusetts]." She represented that she had "[overwhelming] evidence that . . . this allegation never . . . happened, that [D.E.D.] absolutely did not do anything to [his] wife."[3] The defendant volunteered

---

unit and then to a rehabilitation facility as a result of injuries to her ankle and knee. He represented that he had "a number of photographs . . . which really tell the story," and that the photographs would show how severe the beating had been. Plaintiff's counsel told the judge that it was his understanding that there had been a long-standing pattern of abuse in the marriage and that his client was "very reticent and has great difficulty talking about it. It was difficult to get her to assist in the affidavit." He told the judge that the plaintiff had been in the rehabilitation facility since the incident and was scheduled to be discharged the following day -- accounting for the reporting delay. Also, the lawyer represented that his client initially had insisted that she had fallen, but that medical personnel at both the hospital and the rehabilitation facility had "found that the injuries were not consistent with a fall." In the lawyer's view, the photographs would corroborate his argument that the injuries were not consistent with a fall. He stated that the plaintiff's children from a prior marriage had met with him months ago in connection with the pending divorce action "and laid out a very serious pattern of abuse." Finally, he said that his client had only recently agreed to disclose the abuse because "you've got someone who is somewhat in denial and reluctant to go forward, for fear of embarrassing her husband or . . . embarrassing the family."

[3] Defense counsel continued, "I have witnesses subpoenaed here. I just wanted to make an offer of proof and like this -- and would like this order . . . terminated nunc pro tunc. I have . . . video evidence. I have . . . the parties' 19-year-old daughter . . . . [T]he plaintiff told her that she fell,

that he had "been an attorney in good standing with the Commonwealth of Massachusetts for 32 years. [He had] a completely unblemished . . . record. [He] enjoy[ed] an impeccable reputation among the legal bar and [his] peers. [He had] all witnesses . . . to show that it was -- absolutely could not -- [he] could -- it was not possible for [him] to have committed the act . . . that caused the injuries to -- to [his] wife."[4]

The judge responded that there was no need to "get into the evidence" because there was no request to extend the order. The defendant and his lawyer repeatedly represented that there had been no abuse, that the defendant essentially had a solid alibi for the time in question and that his wife was an alcoholic who

---

not that . . . her father had . . . hit her. My client was at work all day. I have video evidence from the security cameras and from the office manager for the [city] that . . . [D.E.D.] was at work from around 10:30 in the morning till eight o'clock at night. I have . . . video evidence or . . . [ten]-minute time shots . . . of his car right outside the [city]. . . . And I would really [ask] . . . that this be . . .vacated or [terminated] nunc pro tunc."

[4] "The . . . video evidence that my attorney . . . referred to shows me arrive at work at the City . . . at . . . about 10:40 A.M. It shows me leave the building at 12:06 . . . P.M. to move my car. And it shows me returning two minutes later -- and parked my car right in view of a -- of a high-definition video camera. And then it shows me leave -- . . . a fifth video shows me leave the building at eight o'clock P.M. And then . . . video slices of every ten minutes, from 11:30 A.M. to 8:30 P.M., show my car in the exact same spot. Never moved. [M]y office manager . . . who I work with, . . . is here. She will testify that I was at work all day."

had fallen at other times in the past. When the judge inquired, the plaintiff's lawyer confirmed that his law firm did, in fact, have the medical records described earlier and would provide them to the judge if asked. The order was terminated.

On March 6, 2015, the defendant filed a motion to vacate the 209A order and to expunge all records of that order. After a March 30, 2015, hearing, the judge endorsed the first page of the defendant's motion, "Allowed."[5] The docket entry stated, "Motion to vacate RO Allowed 3/30/2015."

The commissioner filed a request for clarification of the order to expunge the 209A order. The judge subsequently issued findings of fact in clarification of her order to expunge the 209A order. The judge found that, based on the evidence submitted by the defendant, the alleged abuse could not have happened as claimed by the plaintiff. The judge found that it had been shown by clear and convincing evidence that the plaintiff made false statements in court under oath for the purpose of obtaining the 209A order and that her false assertions constituted a fraud on the court. The judge further found that the harm to the defendant in maintaining a record of

---

[5] The record does not indicate whether the plaintiff or any attorney representing her appeared at the hearing on the motion to vacate and to expunge; her counsel filed a motion to withdraw on March 25, 2015, and the motion was allowed on April 7.

the 209A order outweighed the government's interest in keeping the record in the system. The commissioner filed this appeal.

Discussion. 1. Timeliness of appeal. The judge's allowance of the defendant's motion to vacate the 209A order and to expunge all records of such order was endorsed on the defendant's motion as "[a]llowed," with the date of March 30, 2015. No separate order was signed and the docket reflected only that the "motion to vacate RO Allowed 03/30/15." The commissioner moved for clarification, and the judge, on May 1, 2015, issued findings of fact in furtherance of her order to expunge. The findings were docketed on May 5, 2015, and the commissioner's notice of appeal was filed on July 1, 2015.

The judge thereafter denied the defendant's motion to dismiss the commissioner's appeal as untimely. The defendant, appearing pro se, cross-appealed on that basis but no longer presses the issue on appeal. Because the timeliness of an appeal is jurisdictional, we briefly address it. See Rinaldi v. State Bldg. Code Appeals Bd., 56 Mass. App. Ct. 668, 671 (2002).

The judge did not abuse her discretion in declining to dismiss the commissioner's appeal. In ruling on the defendant's motion to vacate the 209A order and to expunge, the judge's endorsement of "[a]llowed," to the extent it was intended to address expungement, was not clearly indicated by memorandum or order, nor did the docket entry reflect the substance of the

order regarding expungement, as required by Mass.R.Civ.P. 79(a), 365 Mass. 839 (1974). In our view, the disposition of the defendant's motion did not clearly denote an order of expungement so as to give notice that the period for filing an appeal was triggered. See Department of Rev. v. Mason M., 439 Mass. 665, 673 (2003); Zielinski v. Connecticut Valley Sanitary Waste Disposal, Inc., 70 Mass. App. Ct. 326, 330-332 (2007). In these circumstances, the judge's subsequent findings of fact and order to expunge, the substance of which were recorded on the docket on May 5, 2015, started the appeal period. As such, the commissioner's notice of appeal, filed within the sixty-day limit permitted agencies of the Commonwealth under Mass.R.A.P. 4(a), as amended, 464 Mass. 1601 (2013), was timely.

2. Fraud on the court. Records of abuse prevention orders are not to be expunged from the Statewide domestic violence registry (registry) absent a showing that the order was obtained through the commission of fraud on the court. Silva v. Carmel, 468 Mass. 18, 24-25 (2014). Here, the judge's subsidiary findings concerning the plaintiff's actions and allegations in pursuing the 209A order did not support her ultimate finding that the conduct constituted a fraud on the court. "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial

system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."  Adams, 65 Mass. App. Ct. at 729-730, quoting from Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994).

The judge did not specifically find that the plaintiff's claim of abuse was sentiently false, though the judge did find that the false allegation was made for the purpose of obtaining the 209A order.[6]  From this, the defendant argues that the judge's findings satisfied the Adams standard because the plaintiff obtained the 209A order with the requisite awareness that her assertion of abuse was false.

---

[6] The record appendix is incomplete.  It contains none of the affidavits offered by the defendant to substantiate his claim that he could not have committed the abuse.  Specifically, the defendant claimed in his "concise statement of facts and law . . . in support of [his] motion to vacate ab initio abuse prevention order . . . and all records of such order" that he had attached an affidavit from his daughter representing that the plaintiff (her mother) had told her daughter that the injuries were caused by a fall.  He also represented that there was a second affidavit from a colleague in his office averring that the defendant had been in the office from 10:30 A.M. until 8:30 P.M. on December 3, 2014.  A third affidavit, he represented, would show recorded images of his car parked at city hall.  On the bare record we do have, it is neither clear nor convincing that the initial allegation was false and there is no recantation here from the plaintiff -- only a request to terminate the 209A order.  Nevertheless, the judge observed each of the parties, albeit at different times, and her questions show that she paid close attention at each hearing.  In addition, the judge had the benefit of reading the defendant's affidavits.  For all of those reasons, we cannot say that she was wrong when she concluded the initial allegation was false.

However, while suggesting a deliberate purpose to the plaintiff's use of a false allegation -- to obtain the 209A order -- the judge's findings concerning the plaintiff's conduct did not add up to a larger plan intended to harass the defendant or to undermine the judicial process, as was the case in Adams. Here, there was no finding that the plaintiff's conduct was undertaken as part of a "larger pattern of harassment" or "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter." Id. at 729, 730. We think it important to distinguish between a false allegation, on the one hand, and a deliberate scheme, on the other, typically involving others in the court system, combined with a larger pattern of harassment, that has been held to constitute fraud on the court. See MacDonald v. MacDonald, 407 Mass. 196, 202 (1990) ("Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney [an officer of the court] in the perpetration of fraud" [citation omitted]). Compare Wojcicki v. Caragher, 447 Mass. 200, 210-211 (2006) (false testimony, alone, would not support a finding of fraud on the court, without evidence of more egregious conduct).

The judge's findings in this case point to a single instance of a party using a false allegation of abuse to procure a 209A order in an ex parte proceeding. At the hearing after

notice, the plaintiff, through her attorney, did not recant from her earlier allegation; she merely sought to terminate the order. It was the defendant's own view, at the time of the hearing after notice, that the plaintiff suffered from alcohol addiction and did not knowingly make a false complaint. We understand that these are extremely difficult cases for everyone involved -- for plaintiffs who may (or may not) be disclosing personal information with likely serious consequences for their families and even for their safety; for defendants who face serious collateral consequences from the issuance of even an ex parte order, and who may not, in fact, have committed any abuse; and for judges who are charged with determining the truth.

Nonetheless, we also have in mind that "'[t]here is nothing in St. 1992, c. 188, § 7, or in G. L. c. 209A, that permits a record to be removed or that authorizes the entry of a judicial order directing expungement of a record from the system.' [Vaccaro v. Vaccaro, 425 Mass. 153, 156 (1997)]. 'The system is designed to promote the goal of preventing abuse . . . by providing a judge (and other authorized agencies) with complete information about a defendant.' Id. at 157." Adams, 65 Mass. App. Ct. at 728. Furthermore, in Vaccaro, supra at 157-158, the Supreme Judicial Court noted,

> "The system is designed to promote the goal of preventing abuse as prescribed by a variety of statutes by providing a judge (and other authorized agencies) with complete

information about a defendant.  Such information 'can be essential to providing protection for the plaintiff.'  See Guidelines [for Judicial Practice:  Abuse Prevention Proceedings (Oct. 1996)], commentary to Guideline 2:10.  Because all restraining and protective orders are listed, both active and inactive, a judge may be better able to identify situations in which the plaintiff 'may face a particularly heightened degree of danger.'  Id. at commentary to Guideline 3:05. . . .  The power of expungement cannot be a necessary or inevitable implication of the statutory mandate to record such orders and make them available to judges or other authorized agencies.  On the contrary, such a power would be inconsistent with the manifest purpose of G. L. c. 209A and other abuse prevention statutes."

In Adams, supra at 729, this court carved out a narrow exception for fraud on the court where "[i]n essence, the District Court judge found . . . that '[the nineteen] allegations by [Jones] are false and perjurious'; '[his behaviors] are indicative of an obsessive compulsion that is extremely alarming'; '[t]he seeking of the restraining order . . . is part of a larger pattern of harassment'; and '[i]n addition to filing affidavits that contain falsehoods . . . , [Jones] has falsely complained of [Adams] to the Board of Bar Overseers.'"  In so doing, we also explicitly distinguished Vaccaro, stating, "Allowing expungement in this case does not offend the Supreme Judicial Court's rationale in Vaccaro.  As the court stated in that case, the purpose of G. L. c. 209A is to protect prospective victims.  [Vaccaro], 425 Mass. at 157.  In the case before us, Adams was the victim of abuse.  The 209A order against her was obtained fraudulently as a means of

retaliation against her for seeking a 209A order against Jones, and the court was used as a mechanism to perpetrate the fraud." Adams, supra at 734-735 (footnote omitted).

Applying this reasoning to the present case, we are satisfied that something considerably more systemic or egregious than what is shown here is required to constitute fraud on the court and therefore to outweigh the public interest in the commissioner's statutory mandate to maintain 209A records for use by the courts and other authorized agencies. See Vaccaro, supra.

Based on the foregoing, the order denying the defendant's motion to dismiss the commissioner's appeal is affirmed. The order to expunge all records of the 209A order is vacated, and a new order is to enter denying the motion.

So ordered.